IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LIBERTAS FUNDING, LLC,<br><br>                    Plaintiff,<br><br>       v.<br><br>ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC; VOREX RETAIL LLC; and ERIC RAY MYNHIER,<br><br>                    Defendants. | Case No.: |

## NOTICE OF REMOVAL

Pursuant to Rule 9027 of the Federal Rules of Bankruptcy Procedure, 28 U.S.C. §§ 1131, 1334 and 1452, please take notice that ACM Development, LLC, Lucid Tech LLC, Empirical Retail LLC, Euphoria Retail LLC, Nineteen Seventy Four LLC, Omega Enterprises LLC, Ironshield Paving LLC, Rad Retail LLC, Sun FL Enterprises LLC, Lolypalooza Enterprises LLC, Kingdom Property Investments LLC, Vorex Retail LLC and Eric Ray Mynhier ("Defendants"), by and through undersigned counsel, herein give notice of removal of the case captioned LIBERTAS FUNDING, LLC v. ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC; VOREX RETAIL LLC; and ERIC RAY MYNHIER. Index No. 530150

(the "State Court Case") from the Supreme Court of New York, County of Kings to the United States District Court for the Eastern District of New York. In furtherance of this notice, and as required by Rule 9027 of the Bankruptcy Rules, the Defendants state as follows:

1.     On or about November 23, 2021, Libertas Funding LLC (the "Plaintiff") filed a Complaint (the "Complaint") in the Supreme Court of New York, Kings County against the Defendants.

2.     On or about January 12, 2022, the Complaint was served on some or all of the Defendants.

3.     On or about January 20, 2022, lead defendant ACM Development LLC filed a Voluntary Petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 1010 *et seq.* (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Court") at case number 6:22-bk-00210 (the "Bankruptcy Case"). (A true and correct copy of the Voluntary Petition, dated January 20, 2022, is attached hereto as Exhibit A.)

## REMOVAL JURISDICTION

4.     A party may remove a claim or cause of action in a civil action pending in a state court to the district court for the district where such civil action is pending if the district court has or would have jurisdiction over the matter pursuant to section 1334 of title 28 of the United States Code, 28 U.S.C. § 1452(a).

5.     Pursuant to section 1334 of title 28 of the United States Code, the district courts have jurisdiction over all civil proceedings arising under, arising in, or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).

6.     Removal directly to this Court is proper under applicable rules and authority. The Plaintiff's cause of action against Defendant in the State Court involves a claim that has the effect of decreasing the property of the bankruptcy estate over which the federal courts have exclusive jurisdiction pursuant to section 1334(e)(1) of title 28 of the United States Code. Therefore, the State Court Case is a proceeding "arising under" and "arising in" a "case under title 11." For this reason, the State Court Case also raises a federal question as a claim pursuant to the Bankruptcy Code, so removal is proper under section 1331 of title 28 of the United States Code.

7.     Additionally, the Bankruptcy Court has "related to" jurisdiction to preside over the State Court Case when "a civil proceeding is related to a title 11 case if the actions outcome might have an conceivable effect on the bankrupt estate. If that question is answered affirmatively, the litigation falls within the 'related to' jurisdiction of the bankruptcy court. Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *SPV Osus LTD V. UBS AG*, 882 F.3d 333, 339-40 (2nd Cir. 2018) (internal quotation marks and citations omitted).

8.     The Plaintiff seeks recovery against ACM Development LLC and the other Defendants for an alleged breach of contract relating to a loan to ACM Development LLC.

9.     The State Court Case seeks payment of $1,759,166.60 for alleged default of payment on a so-called "merchant credit" loan with an interest rate of nearly 40%.

10.     The State Court Case is about a single loan with a single plan for repayment. It makes no distinction among the Defendants as to particular amounts allegedly allotted to each, different legal theories as to each, or any other distinction. In fact, the counts against each entity, except the individual Eric Ray Mynhier, who is identified as a guarantor, are identical with the exception of each entity being identified with a different numeral.

11.    The outcome of the State Court Case has a direct impact on the Bankruptcy Case as the recovery of damages against the Defendants would limit the funds available in the bankruptcy estate to pay other creditors with valid claims and would also be detrimental to ACM Development LLC's successful reorganization.

12.    Because the claims against the Defendants (apart from the claim against the individual Eric Ray Mynhier, which is purely derivative of the other claims) are indistinguishable from each other, any judgment against any Defendant would have the same effect on the Bankruptcy Estate.

13.    Further, if parallel litigation were to continue both in the Supreme Court for the Kings County and in the Bankruptcy Court, a serious danger of inconsistent findings by the two courts would necessarily arise.

14.    This Notice of Removal is timely filed pursuant to Rule 9027(a)(2) of the Federal Rules of Bankruptcy Procedure, as the Notice of Removal was filed within 90 days after the order for relief in the case under the Code.

15.    Promptly after filing this Notice of Removal, the Defendants shall serve a copy of the Notice upon all counsel of record in the State Court Case.

16.    The Defendants will promptly file a true and correct copy of this Notice of Removal with the clerk for the Supreme Court of New York, Kings County as required by Rule 9027(c) of the Federal Rules of Bankruptcy Procedure.

17.    True and correct copies of all process and pleadings in the State Court Case are attached hereto as Exhibit B as required by Rule 9027(a)(1) of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, Defendants, ACM Development, LLC, Lucid Tech LLC, Empirical Retail LLC, Euphoria Retail LLC, Nineteen Seventy Four LLC, Omega Enterprises LLC, Ironshield Paving LLC, Rad Retail LLC, Sun FL Enterprises LLC, Lolypalooza Enterprises LLC, Kingdom Property Investments LLC, Vorex Retail LLC and Eric Ray Mynhier respectfully remove the State Court Case pending in the State of New York, Kings County, at Index No.530150/2021, to the United States District Court for the Eastern District of New York.

Dated: February 11, 2022

MORITT HOCK & HAMROFF LLP

By: _____
Alexander D. Widell
400 Garden City Plaza
Garden City, New York 11530
(516) 873-2000
awidell@moritthock.com

*Attorneys for Defendants*

2873411v1

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the within Notice of Removal was served this 11th day of February, 2022, via electronic mail to the following counsel for Plaintiff:

> Steven Zakharyayev, Esq.
> 10 West 37th Street, Room 602
> New York, NY 10018
> (212) 716-0681
> steven@stevenzlaw.com

Dated: February 11, 2022

MORITT HOCK & HAMROFF LLP

By: _____
Alexander D. Widell
400 Garden City Plaza
Garden City, New York 11530
(516) 873-2000
awidell@moritthock.com

*Attorneys for Defendants*

2873411v1

# EXHIBIT A

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

MIDDLE DISTRICT OF FLORIDA

Case number *(if known)* _____ Chapter __11__

☐ Check if this an amended filing

## Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy      04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| 1. | Debtor's name | ACM Development, LLC |
|---|---|---|

**2. All other names debtor used in the last 8 years**

Include any assumed names, trade names and *doing business as* names

**3. Debtor's federal Employer Identification Number (EIN)**      26-3582332

**4. Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **562 Bowness Avenue**<br>**Ocoee, FL 34761**<br>Number, Street, City, State & ZIP Code | P.O. Box, Number, Street, City, State & ZIP Code |
| **Orange**<br>County | **Location of principal assets, if different from principal place of business**<br><br>Number, Street, City, State & ZIP Code |

**5. Debtor's website (URL)**      **acmdev.net**

**6. Type of debtor**

☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

| Debtor | **ACM Development, LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

**7. Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

■ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

**1794**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

■ Chapter 11. *Check **all** that apply:*

    ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

    ☐ A plan is being filed with this petition.

    ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

    ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

    ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**
If more than 2 cases, attach a separate list.

■ No.

☐ Yes.

| | District | When | Case number | |
|---|---|---|---|---|
| | District | When | Case number | |

Debtor   **ACM Development, LLC**                                         Case number *(if known)* _____
         Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**
 ■ No
☐ Yes.

List all cases. If more than 1, attach a separate list

| | | | | |
|---|---|---|---|---|
| Debtor _____ | | | Relationship _____ | |
| District _____ | When _____ | | Case number, if known _____ | |

**11. Why is the case filed in *this district*?**   *Check all that apply:*

■ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**
■ No
☐ Yes.   Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
                         Number, Street, City, State & ZIP Code

**Is the property insured?**
☐ No
☐ Yes.   Insurance agency _____
          Contact name _____
          Phone _____

■ **Statistical and administrative information**

**13. Debtor's estimation of available funds**   *Check one:*

■ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ■ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated Assets**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ■ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |
| ☐ $50,001 - $100,000 | ☐ $10,000,001 - $50 million | ☐ $1,000,000,001 - $10 billion |
| ☐ $100,001 - $500,000 | ☐ $50,000,001 - $100 million | ☐ $10,000,000,001 - $50 billion |
| ☐ $500,001 - $1 million | ☐ $100,000,001 - $500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0 - $50,000 | ☐ $1,000,001 - $10 million | ☐ $500,000,001 - $1 billion |

Debtor    **ACM Development, LLC**                                              Case number (*if known*) _____
          Name

☐ $50,001 - $100,000              ■ $10,000,001 - $50 million        ☐ $1,000,000,001 - $10 billion
☐ $100,001 - $500,000             ☐ $50,000,001 - $100 million       ☐ $10,000,000,001 - $50 billion
☐ $500,001 - $1 million           ☐ $100,000,001 - $500 million      ☐ More than $50 billion

Debtor    **ACM Development, LLC**                 Case number *(if known)*
        Name

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

| | |
|---|---|
| **17. Declaration and signature of authorized representative of debtor** | The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition. |
| | I have been authorized to file this petition on behalf of the debtor. |
| | I have examined the information in this petition and have a reasonable belief that the information is true and correct. |
| | I declare under penalty of perjury that the foregoing is true and correct. |

Executed on    **January 20, 2022**
           MM / DD / YYYY

**X** _____         **Eric R. Mynhier**
    Signature of authorized representative of debtor      Printed name

Title   **Manager**

| | | |
|---|---|---|
| **18. Signature of attorney** | **X**   /s/ Justin M. Luna | Date   **January 20, 2022** |
| | Signature of attorney for debtor | MM / DD / YYYY |

        **Justin M. Luna 0037131**
        Printed name

        **Latham Luna Eden & Beaudine LLP**
        Firm name

        **201 S. Orange Avenue**
        **Suite 1400**
        **Orlando, FL 32801**
        Number, Street, City, State & ZIP Code

        Contact phone   **(407) 481-5800**      Email address   **jluna@lathamluna.com**

        **0037131 FL**
        Bar number and State

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **ACM Development, LLC** |
| United States Bankruptcy Court for the: | **MIDDLE DISTRICT OF FLORIDA** |
| Case number (if known): | |

☐ Check if this is an

amended filing

## Official Form 204
### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31).  Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **Adept Striping Company, Inc.** P.O. Box 565 Geneva, FL 32732 | | Services performed | | | | $65,296.70 |
| **Bank of the West** 1625 W Fountainhead Pkwy AZ-FTN-10C-A Tempe, AZ 85282 | | 2020 Bomad BW11RH-5 Pneumatic Roller, Serial #101538761045, and all related equipment leased or financed from Bank of the West listed in Agreement #26 | | Unknown | $0.00 | Unknown |
| **Bank of the West** 1625 W Fountainhead Pkwy AZ-FTN-10C-A Tempe, AZ 85282 | | 2019 BOMAG Pneumatic Roller, Serial #101538761048 and all related equipment leased or financed from Bank of the West regarding Agreement #2668256 | | Unknown | $0.00 | Unknown |
| **C T Corporation System** as Representative 330 N Brand Blvd, Ste 700 Glendale, CA 91203 | | All Assets of the Debtor | | Unknown | $0.00 | Unknown |
| **C T Corporation System** as Representative 330 N Brand Blvd, Ste 700 Glendale, CA 91203 | | All assets of the Debtor | | Unknown | $0.00 | Unknown |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

| Debtor | ACM Development, LLC | | Case number *(if known)* | | |
|---|---|---|---|---|---|
| | Name | | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| C T Corporation Sytem 330 N Brand Blvd. Suite 700 Glendale, CA 91203 | | All equipment financed or leased by the Secured Party to the Debtor | | Unknown | $0.00 | Unknown |
| Channel Partners Equipment Finance, LLC 11100 Wayzata Blvd. #305 Hopkins, MN 55305 | | 2004 Terex Soil Stabilizer, Model #RS325B, Serial # 560156; 2020 Walker Nelson Compactor, Model #BPU4045A-67, Serial # 11246455 | | $72,798.57 | $0.00 | $72,798.57 |
| Cogent Bank 113 Saxon Blvd. Orange City, FL 32763 | | All assets of the Debtor | | $2,995,674.11 | $0.00 | $2,995,674.11 |
| Discount Tire Company 20225 N. Scottsdale Rd. Scottsdale, AZ 85255 | | Services performed | | | | $11,242.35 |
| Dobbs Equipment, LLC 29592 Network Place Chicago, IL 60673-1295 | | Trade debt | | | | $107,793.35 |
| Ferguson Waterworks 801 Thorpe Road Orlando, FL 32824-8016 | | Plumbing supplies | | | | $26,774.84 |
| HercRentals 27500 Riverview Center Blvd. Suite 100 Bonita Springs, FL 34134 | | Trade debt | | | | $35,561.53 |
| Libertas Funding, LLC 411 West Putnma Ave. Suite 220 Greenwich, CT 06380 | | Certain Accounts Receivable | | $775,000.00 | $0.00 | $775,000.00 |
| Marlin Capital Solutions, LLC 300 Fellowship Road Mount Laurel, NJ 08054 | | Contract | | | | $5,164.34 |

Software Copyright (c) 1996-2021 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| Debtor | ACM Development, LLC | | | | Case number *(if known)* | | |
|---|---|---|---|---|---|---|---|
| | Name | | | | | | |

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| Miller Bros. Giant Tire Service P.O. Box 12012 Brooksville, FL 34603 | | Goods or Services | | | | $10,606.98 |
| National Trench Safety Mikedon P.O. Box 750963 Houston, TX 77275-0963 | | Line of Credit | | | | $281,410.19 |
| Ring Power P.O. Box 935004 Atlanta, GA 31193-5004 | | Good or Services | | | | $222,198.75 |
| Russell and Sons, Inc. d/b/a Orion Waste Solutions 12600 Automobile Blvd. Clearwater, FL 33762 | | Goods or Services | | | | $12,892.83 |
| The Huntington National Bank 11100 Wayzata Blvd. Suite 801 Minnetonka, MN 55305 | | 1 2020 Caterpillar CB24B; 1 2020 Weiler C307; 1 2020 Massey Ferguson MF4607M, together with all accessories, attachments, parts, repairs, upgrades, ad | | $13,878.11 | $0.00 | $13,878.11 |
| The Reinalt-Thomas Corporation d/b/a Discount Tire 20225 N. Scottsdale Rd. Dept. 50005 Scottsdale, AZ 85255 | | Goods or Services | | | | $11,242.35 |

## United States Bankruptcy Court
### Middle District of Florida

In re   **ACM Development, LLC**

Debtor(s)

Case No. ___
Chapter   **11**

### LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with rule 1007(a)(3) for filing in this Chapter 11 Case

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **Eric R. Mynhier**<br>**938 Tilden Oaks Trail**<br>**Winter Garden, FL 34787** | | | **100% ownership** |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the **Manager** of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date   **January 20, 2022**

Signature

**Eric R. Mynhier**

*Penalty for making a false statement of concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

## United States Bankruptcy Court
### Middle District of Florida

In re   **ACM Development, LLC**

Debtor(s)

Case No.
Chapter    **11**

# VERIFICATION OF CREDITOR MATRIX

I, the Manager of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true and correct to the best of my knowledge.

Date:   **January 20, 2022**

**Eric R. Mynhier, Manager**
Signer/Title

ACM Development, LLC - - Pg. 1 of 2

ACM Development, LLC
562 Bowness Avenue
Ocoee, FL 34761

Channel Partners Equipment
Finance, LLC
11100 Wayzata Blvd. #305
Hopkins, MN 55305

FEL-Orlando Waterworks #126
P.O. Box 100286
Atlanta, GA 30384-0286

Justin M. Luna
Latham Luna Eden & Beaudine LLP
201 S. Orange Avenue
Suite 1400
Orlando, FL 32801

Cogent Bank
113 Saxon Blvd.
Orange City, FL 32763

Ferguson Waterworks
801 Thorpe Road
Orlando, FL 32824-8016

Adept Striping Company, Inc.
P.O. Box 565
Geneva, FL 32732

Commercial Equipment Finance
International, LLC
2525 Ponce de Leon Blvd.
Suite 300
Coral Gables, FL 33134

HercRentals
27500 Riverview Center Blvd.
Suite 100
Bonita Springs, FL 34134

Bank of the West
1625 W Fountainhead Pkwy
AZ-FTN-10C-A
Tempe, AZ 85282

Discount Tire Company
20225 N. Scottsdale Rd.
Scottsdale, AZ 85255

Ironshield Paving, LLC
938 Tilden Oaks Trail
Winter Garden, FL 34787

BARR Credit Services, Inc.
4555 S. Palo Verde Rd.
Suite 125
Tucson, AZ 85714

Dobbs Equipment, LLC
2570 S. Falkenburg Rd.
Riverview, FL 33578

John Deere Construction &
Forestry Company
6400 NW 86th Street
P.O. Box 6630
Johnston, IA 50131

Brown Law Firm, PL
Attn:  Matthew Brown, Esq.
1540 Internastional Parkway
Suite 2000
Lake Mary, FL 32746

Dobbs Equipment, LLC
29592 Network Place
Chicago, IL 60673-1295

John Deere Financial
6400 NW 86th Ave.
P.O. Box 6630
Johnston, IA 50131

C T Corporation System
as Representative
330 N Brand Blvd, Ste 700
Glendale, CA 91203

Empirical Retail, LLC
849 Oakland Park Blvd.
Winter Garden, FL 34787

Kingdom Properties Investments
562 Bowness Ave.
Ocoee, FL 34761

C T Corporation Sytem
330 N Brand Blvd.
Suite 700
Glendale, CA 91203

Eric R. Mynhier
938 Tilden Oaks Trail
Winter Garden, FL 34787

Kingdom Property Investments, LL
562 Bowness Ave.
Ocoee, FL 34761

Caterpillar Financial Services C
2120 West End Ave.
Nashville, TN 37209

Euphoria Retail, LLC
938 Tilden Oaks Trail
Winter Garden, FL 34787

Libertas Funding, LLC
411 West Putnma Ave.
Suite 220
Greenwich, CT 06380

ACM Development, LLC - - Pg. 2 of 2

Lolypalooza Enterprises, LLC
Winter Garden, FL 34787

Omega Enterprises, LLC
938 Tilden Oaks Trail
Winter Garden, FL 34787

TCF National Bank
11100 Wayzata Blvd.
Suite 801
Minnetonka, MN 55305

Lucid Tech, LLC
938 Tilden Oaks Trail
Winter Garden, FL 34787

RAD Retail, LLC
938 Tilden Oaks Trail
Winter Garden, FL 34787

The Huntington National Bank
1405 Xenium Lane North
PCC180
Plymouth, MN 55441

Marlin Capital Solutions, LLC
300 Fellowship Road
Mount Laurel, NJ 08054

Ring Power
P.O. Box 935004
Atlanta, GA 31193-5004

The Huntington National Bank
11100 Wayzata Blvd.
Suite 801
Minnetonka, MN 55305

Miller Bros. Giant Tire Service
P.O. Box 12012
Brooksville, FL 34603

Ring Power Corporation
500 World Commerce Parkway
Saint Augustine, FL 32092

The Huntington National Bank
1405 Xanium Lane N
(PCC180)
Plymouth, MN 55441

Miller Bros. Giant Tire Service
10340 Camp Mine Rd.
Brooksville, FL 34601

Russell and Sons, Inc.
d/b/a Orion Waste Solutions
12600 Automobile Blvd.
Clearwater, FL 33762

The Reinalt-Thomas Corporation
d/b/a Discount Tire
20225 N. Scottsdale Rd.
Dept. 50005
Scottsdale, AZ 85255

National Trench Safety Mikedon
P.O. Box 750963
Houston, TX 77275-0963

Seaside National Bank & Trust
201 S. Orange Ave.
Suite 1350
Orlando, FL 32801

The Reinalt-Thomas Corporation
P.O. Box 842349
Los Angeles, CA 90084-2349

Navitas Credit Corp.
201 Executive Center Dr.
Suite 100
Columbia, SC 29210

Star Capital Gropu, L.P.
650 Park Avenue
Suite 210
King of Prussia, PA 19406

Vortex Retail, LLC
938 Tilden Oaks Trail
Winter Garden, FL 34787

Nineteen Seventy Four, LLC
938 Tilden Oaks Trail
Winter Garden, FL 34787

Sun FL Enterprises, LLC
849 Oakland Park Blvd.
Winter Garden, FL 34787

Wells Fargo Bank, N.A.
800 Walnut Street
F0005-044
Des Moines, IA 50309

Nortrax, Inc.
4042 Park Oaks Blvd.
Suite 200
Tampa, FL 33610

TCF Equipment Finance
11000 Wayzata Blvd.
Suite 801
Minnetonka, MN 55305

Wells Fargo Bank, N.A.
800 Walnut Street
F0005-004
Des Moines, IA 50309

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Middle District of Florida

In re  **ACM Development, LLC** _____
                                 Debtor(s)

Case No. _____
Chapter   **11**

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.    Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

        For legal services, I have agreed to accept ............................................. $         **85,000.00**

        Prior to the filing of this statement I have received ........................... $         **85,000.00**

        Balance Due .................................................................................... $         **0.00**

2.    The source of the compensation paid to me was:

        ■ Debtor      ☐ Other (specify):   **($25,000 was paid by Ironshield Paving, LLC)**

3.    The source of compensation to be paid to me is:

        ■ Debtor      ☐ Other (specify):

4.    ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

        ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.    In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

        a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
        b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
        c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
        d.  Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
        e.  [Other provisions as needed]

6.    By agreement with the debtor(s), the above-disclosed fee does not include the following service:
        **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any other adversary proceeding.**

### CERTIFICATION

    I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**January 20, 2022**_____
*Date*

        **/s/ Justin M. Luna**_____
        **Justin M. Luna 0037131**
        *Signature of Attorney*
        **Latham Luna Eden & Beaudine LLP**
        **201 S. Orange Avenue**
        **Suite 1400**
        **Orlando, FL 32801**
        **(407) 481-5800   Fax: (407) 481-5801**
        **jluna@lathamluna.com**
        *Name of law firm*

## United States Bankruptcy Court
### Middle District of Florida

In re  __ACM Development, LLC__ _____          Case No. _____
                                    _____                 Chapter  __11__
                                      Debtor(s)

### CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for   __ACM Development, LLC__   in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

**January 20, 2022**                          /s/ Justin M. Luna
Date                                    **Justin M. Luna 0037131**
                                        Signature of Attorney or Litigant
                                        Counsel for   **ACM Development, LLC**
                                        **Latham Luna Eden & Beaudine LLP**
                                        **201 S. Orange Avenue**
                                        **Suite 1400**
                                        **Orlando, FL 32801**
                                        **(407) 481-5800 Fax:(407) 481-5801**
                                        **jluna@lathamluna.com**

# EXHIBIT B

NYSCEF DOC. NO. 1                                                          RECEIVED NYSCEF: 11/23/2021

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

-------------------------------------------------------------x

LIBERTAS FUNDING, LLC,

                              Plaintiff,

                    -against-

ACM DEVELOPMENT, LLC; LUCID TECH LLC;
EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC;
NINETEEN SEVENTY FOUR LLC; OMEGA
ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD
RETAIL LLC; SUN FL ENTERPRISES LLC;
LOLYPALOOZA ENTERPRISES LLC; KINGDOM
PROPERTY INVESTMENTS LLC; VOREX RETAIL
LLC **and** ERIC RAY MYNHIER,

                              Defendant(s).

-------------------------------------------------------------x

Index No. _____

**SUMMONS**

To the above-named Defendant(s):

        YOU ARE HEREBY SUMMONED and required to serve upon Plaintiff's attorney an

answer to the complaint in this action within twenty days after the service of this summons,

exclusive of the day of service, or within thirty days after service is complete if this summons is

not personally delivered to you within the State of New York. In case of your failure to answer,

judgment will be taken against you by default for the relief demanded in the annexed complaint.

        Plaintiff designates KINGS County as the place of trial. The basis of the venue is designated in the
Agreement between the parties.

        Dated: November 17, 2021
               New York, NY

                                        By: */s/ Steven Zakharyayev*
                                        Steven Zakharyayev, Esq.
                                        10 W 37th Street, RM 602
                                        New York, NY 10018
                                        (201) 716-0681
                                        *Attorneys for Plaintiff*

TO DEFENDANT(S):

ACM DEVELOPMENT, LLC;
562 BOWNESS AVE, OCOEE, FL 34761

LUCID TECH LLC;
938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787

EMPIRICAL RETAIL LLC;
849 OAKLAND PARK BLVD, WINTER GARDEN, FL 34787

EUPHORIA RETAIL LLC;
938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787

NINETEEN SEVENTY FOUR LLC;
938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787

OMEGA ENTERPRISES LLC;
938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787

IRONSHIELD PAVING LLC;
938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787

RAD RETAIL LLC;
938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787

SUN FL ENTERPRISES LLC;
849 OAKLAND PARK BLVD, WINTER GARDEN, FL 34787

LOLYPALOOZA ENTERPRISES LLC;
938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787

KINGDOM PROPERTY INVESTMENTS LLC
938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787

ERIC RAY MYNHIER
849 OAKLAND PARK BLVD, WINTER GARDEN, FL 34787

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---------------------------------------------------------------X

LIBERTAS FUNDING, LLC

                Plaintiff,

              -against-

ACM DEVELOPMENT, LLC; LUCID TECH LLC;
EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC;
NINETEEN SEVENTY FOUR LLC; OMEGA
ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD
RETAIL LLC; SUN FL ENTERPRISES LLC;
LOLYPALOOZA ENTERPRISES LLC; KINGDOM
PROPERTY INVESTMENTS LLC; VORTEX RETAIL
LLC **and** ERIC RAY MYNHIER,

              Defendant(s).

---------------------------------------------------------------X

**Index No.** _____

**VERIFIED COMPLAINT**

Plaintiff, LIBERTAS FUNDING, LLC, by its attorney Steven Zakharyayev, Esq. as and

for its complaint against Defendant(s) herein, alleges as follows:

1. Plaintiff LIBERTAS FUNDING, LLC ("Plaintiff") is a New York limited liability
   company engaged in the receivable financing business.

2. Upon information and belief, ACM DEVELOPMENT, LLC ("Defendant-Seller") is a
   foreign limited liability company.

3. Upon information and belief, LUCID TECH LLC ("Defendant-Seller 2") is a foreign
   limited liability company.

4. Upon information and belief, EMPIRICAL RETAIL LLC ("Defendant-Seller 3") is a
   foreign limited liability company.

5. Upon information and belief, EUPHORIA RETAIL LLC ("Defendant-Seller 4") is a
   foreign limited liability company.

6. Upon information and belief, NINETEEN SEVENTY FOUR LLC ("Defendant-Seller
   5") is a foreign limited liability company.

NYSCEF DOC. NO. 1                                           RECEIVED NYSCEF: 11/23/2021

7. Upon information and belief OMEGA ENTERPRISES LLC ("Defendant-Seller 6") is a foreign limited liability company.

8. Upon information and belief, IRONSHIELD PAVING LLC ("Defendant-Seller 7") is a foreign limited liability company.

9. Upon information and belief, RAD RETAIL LLC ("Defendant-Seller 8") is a foreign limited liability company.

10. Upon information and belief SUN FL ENTERPRISES LLC ("Defendant-Seller 9") is a foreign limited liability company.

11. Upon information and belief, LOLYPALOOZA ENTERPRISES LLC ("Defendant-Seller 10") is a foreign limited liability company.

12. Upon information and belief, KINGDOM PROPERTY INVESTMENTS LLC ("Defendant-Seller 11") is a foreign limited liability company.

13. Upon information and belief, VORTEX RETAIL LLC ("Defendant-Seller 12") is a foreign limited liability company.

14. Defendant ERIC RAY MYNHIER ("Defendant-Guarantor") is an individual residing in the State of Florida and upon information and belief is a principal of defendant-seller.

15. Pursuant to a receivable purchase agreement and personal guaranty dated August 30, 2021 (collectively "Agreement"), Plaintiff purchased from Defendant-Seller $2,040,000.00 ("Purchased Amount") of each future account and payment obligation owing to defendant-seller from its customers as they are generated in the course of Defendant-Seller's business ("Future Receivables"). A copy of the merchant agreement is attached as EXHIBIT A.

16. The Agreement contains the parties' express consent to the jurisdiction of the courts located in the State of New York.

17. Pursuant to the Agreement, Plaintiff was authorized to collect via an ACH electronic

debit of the Future Receivables, until such time that Plaintiff collected the total amount of purchased receivables.

18. Critical to facilitating this transaction, the Agreement contains Defendant-Seller's express covenant not to revoke its ACH authorization to Plaintiff or otherwise take any measure to interfere with Plaintiff's ability to collect the Future Receivables.

19. Contrary to Defendant-Seller's express covenant set forth above, Defendant-Seller materially breached the terms of the Agreement on October 19, 2021 by changing the designated bank account without Plaintiff's authorization, by placing a stop payment on Plaintiff's debits to the account or by otherwise taking measures to interfere with Plaintiff's ability to collect the Future Receivables. A copy of the payment history is attached as EXHIBIT B.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller)

20. The Agreement provides that Defendant-Seller shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

21. As a result of Defendant-Seller's breach of the provisions set forth above, Defendant-Seller has defaulted under the Agreement.

22. Pursuant to the Agreement, in the event of Defendant-Seller's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

23. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller)

24. The Agreement provides that Defendant-Seller 2 shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

25. As a result of Defendant-Seller 2's breach of the provisions set forth above, Defendant-Seller 2 has defaulted under the Agreement.

26. Pursuant to the Agreement, in the event of Defendant-Seller 2's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

27. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 2 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 2 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 3)

28. The Agreement provides that Defendant-Seller 3 shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

29. As a result of Defendant-Seller 3's breach of the provisions set forth above, Defendant-Seller 3 has defaulted under the Agreement.

30. Pursuant to the Agreement, in the event of Defendant-Seller 3's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

31. Subtracting the amount of receivables Plaintiff has previously collected from

Defendant-Seller under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 3 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 4)

32. The Agreement provides that Defendant-Seller 4 shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

33. As a result of Defendant-Seller 4's breach of the provisions set forth above, Defendant-Seller 4 has defaulted under the Agreement.

34. Pursuant to the Agreement, in the event of Defendant-Seller 4's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

35. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 4 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 4 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 5)

36. The Agreement provides that Defendant-Seller 5 shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

37. As a result of Defendant-Seller 5's breach of the provisions set forth above, Defendant-Seller 5 has defaulted under the Agreement.

38. Pursuant to the Agreement, in the event of Defendant-Seller 5's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately

due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

39. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 5 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 5 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 6)

40. The Agreement provides that Defendant-Seller 6 shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

41. As a result of Defendant-Seller 6's breach of the provisions set forth above, Defendant-Seller 6 has defaulted under the Agreement.

42. Pursuant to the Agreement, in the event of Defendant-Seller 6's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

43. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 6 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 6 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 7)

44. The Agreement provides that Defendant-Seller 7 shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

45. As a result of Defendant-Seller 7's breach of the provisions set forth above, Defendant-

Seller 7 has defaulted under the Agreement.

46. Pursuant to the Agreement, in the event of Defendant-Seller 7's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

47. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 7 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 7 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 8)

48. The Agreement provides that Defendant-Seller 8 shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

49. As a result of Defendant-Seller 8's breach of the provisions set forth above, Defendant-Seller 8 has defaulted under the Agreement.

50. Pursuant to the Agreement, in the event of Defendant-Seller 8's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

51. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 8 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 8 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A NINTH CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 9)

52. The Agreement provides that Defendant-Seller 9 shall be in default of the Agreement

if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

53. As a result of Defendant-Seller 9's breach of the provisions set forth above, Defendant-Seller 9 has defaulted under the Agreement.

54. Pursuant to the Agreement, in the event of Defendant-Seller 9's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

55. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 9 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 9 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A TENTH CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 10)

56. The Agreement provides that Defendant-Seller 10 shall be in default of the Agreement if, *inter alia,* it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

57. As a result of Defendant-Seller 10's breach of the provisions set forth above, Defendant-Seller 10 has defaulted under the Agreement.

58. Pursuant to the Agreement, in the event of Defendant-Seller 10's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

59. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 10 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 10 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

Case 1:22-cv-00787-HG-MMH   Document 1   Filed 02/11/22   Page 33 of 68 PageID #: 33

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 11)

60. The Agreement provides that Defendant-Seller 11 shall be in default of the Agreement if, *inter alia*, it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

61. As a result of Defendant-Seller 11's breach of the provisions set forth above, Defendant-Seller 11 has defaulted under the Agreement.

62. Pursuant to the Agreement, in the event of Defendant-Seller 11's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

63. Subtracting the amount of receivables Plaintiff has previously collected from Defendant-Seller 11 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 11 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A TWLEVTH CAUSE OF ACTION
### (Breach of Contract as to Defendant-Seller 12)

64. The Agreement provides that Defendant-Seller 12 shall be in default of the Agreement if, *inter alia*, it breaches any covenants contained therein or makes any representation or warranty proving to have been incorrect, false or misleading in any material respect.

65. As a result of Defendant-Seller 12's breach of the provisions set forth above, Defendant-Seller 12 has defaulted under the Agreement.

66. Pursuant to the Agreement, in the event of Defendant-Seller 12's default, Plaintiff may declare the total amount of receivables purchased and not delivered as immediately due and owing to Plaintiff, including costs and fees. Plaintiff now has a balance of $1,759,166.60 in undelivered Future Receivables.

67. Subtracting the amount of receivables Plaintiff has previously collected from

Defendant-Seller 12 under the Agreement from the total Future Receivables purchased by Plaintiff, there is presently due and owing from Defendant-Seller 12 to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

## AS AND FOR A THIRTEETH CAUSE OF ACTION
### (Breach of Guaranty as to Defendant-Guarantor)

68. The Agreement contains Defendant-Guarantor's separately executed and unconditional guarantee of payment in the event of default under the Agreement by Defendant-Seller ("Guaranty").

69. As a result of Defendant-Seller's breach and default under the Agreement as set forth above and pursuant to the Guaranty, there is presently due and owing from Defendant-Guarantor to Plaintiff the amount of $1,759,166.60 with interest thereon from October 19, 2021.

**WHEREFORE,** Plaintiff demands judgment against defendants on the respective causes of action in the amount of $1,759,166.60, plus interest from October 19, 2021 and costs, for such other and further relief as this Court may deem just and proper.

Dated: November 17, 2021
New York, NY

By:/s/ *Steven Zakharyayev*
STEVEN ZAKHARYAYEV, ESQ
10 W 37th Street, RM 602
New York, NY 10018
(201) 716-0681
*Attorneys for Plaintiff*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

LIBERTAS FUNDING, LLC,

Plaintiff,

-against-

ACM DEVELOPMENT, LLC; LUCID TECH LLC;
EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC;
NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES
LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN
FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES
LLC; KINGDOM PROPERTY INVESTMENTS LLC;
VORTEX RETAIL LLC and ERIC RAY MYNHIER,

Defendant(s).

Index No. _____

**VERIFICATION BY A PARTY**

x

STATE OF NEW YORK)

COUNTY OF WESTCHESTER)

RICKY PALACIO, being duly sworn, hereby deposes and states the following:

I am a(n) CUSTOMER SERVICE REPRESENTATIVE of LIBERTAS FUNDING, LLC in the within

action. I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my own

knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters,

I believe them to be true.

The foregoing statements are true under penalties of perjury.

_____
RICKY PALACIO

ACKNOWLEDGEMENT

STATE OF _New York_ )
                                              ):
COUNTY OF _Westchester_ )

On _November 23_, 2021 before me, the undersigned, personally appeared RICKY PALACIO the
CUSTOMER SERVICE REPRESENTATIVE of Plaintiff, personally known to me or proved to me on the basis of
satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me
that he executed the same in his representative capacity, and that by his signature on the instrument, he executed the
instrument.

_____

ROSE ABENA CLOTTEY
Notary Public - State of New York
NO. 01CL6290461
Qualified in Westchester County
My Commission Expires Oct 7, 2021  2025



# LIBERTAS

**Libertas Funding LLC**
411 West Putnam Ave Suite 220, Greenwich, CT 06380

### AGREEMENT OF SALE OF FUTURE RECEIPTS

This **AGREEMENT OF SALE OF FUTURE RECEIVABLES** (this "Agreement") dated as of **08/30/2021**, is made by and between **Libertas Funding LLC**, a Connecticut Limited Liability Company as purchaser ("Purchaser"), the merchant whose name, address and other pertinent information is set forth below, as seller ("Merchant"), and the individual owner/guarantor of the Merchant whose name, address and other pertinent information are set forth below ("Guarantor"). For good and valuable consideration, the mutual receipt and sufficiency of which is hereby acknowledged, the parties to this Agreement agree as follows:

**Merchant Information (see addendum)**

| | |
|---|---|
| **Merchant Legal Name:** ACM DEVELOPMENT, LLC, et al. | **DBA Name:** ACM Development |
| **Entity Type:** Limited Liability Company | **FEIN:** |
| **State Of Incorporation:** FL | **Bank Name:** PINNACLE BANK |
| **Address:** 562 BOWNESS AVE, OCOEE,FL, 34761 | **Phone:** 4073473353 |

**OWNER INFORMATION (referred to individually or collectively as the ("Owner"))**

| | | |
|---|---|---|
| **Name of Owner Guarantor 1:** ERIC RAY MYNHIER | **Cell Phone:** 321-624-3256 | **Social Security #:** |
| **Home Address:** 849 OAKLAND PARK BLVD | **City/State:** WINTER GARDEN, FL | **Zip Code:** 34787 |
| **Ownership %:** 100 | **Email:** Eric@acmdev.net | |

### PRIMARY TERMS

THIS AGREEMENT INCLUDES A JURY TRIAL AND CLASS ACTION WAIVER. PLEASE READ IT CAREFULLY.

In this Agreement, you are selling to us a specified amount of future payments your customers make for your goods and services, as further defined below ("Future Receipts"). We agree to buy from you (and you agree to sell to us) the amount of Future Receipts shown below (the "Amount Sold") in exchange for the "Purchase Price" shown below. In order to deliver to us the Amount Sold, you assign to us the share of your Future Receipts ("Specified Percentage") shown below, every week /day from the date we deliver the Purchase Price until we have received the entire Amount Sold and all fees or other amounts due under this Agreement (the "Completion Amount").

We are buying Future Receipts from you, not loaning you money. You are not required to pay interest on the Purchase Price and this Agreement has no term or required payment amounts that are not subject to change based on your future revenue. Instead, your obligation is to deliver to us the Specified Percentage of your Future Receipts as they are generated in the ordinary course of your business. This means that your obligation to us aligns with your cash flow. When your Future Receipts decline because business is slow, you will be able to deliver Future Receipts to us more slowly.

By purchasing Future Receipts from you, we assume risks such as not obtaining the Future Receipts we bought as quickly as we anticipated, or not receiving all of them if you go out of business. However, you are not allowed to engage in "bad acts" that unfairly prevent us from receiving what we paid for. For example, unless you cease operations, you are not allowed to change the bank account in which we collect our Weekly Delivery Amounts (see below) without our approval, block our ability to collect our Weekly Delivery Amounts, sell your Future Receipts to another funding company (stacking) or close your business and start up another similar business right away. Additionally, you are representing that the information that you provided us is accurate in all material respects and that you have not omitted providing us with information that is material to your business. The details on this are below.

Page 1                                                                                                              288304 - 08/30/2021

## Detailed Terms and Conditions

**KEY BUSINESS TERMS AND DEFINITIONS:**

| | | |
|---|---|---|
| **Amount Sold** | $2,040,000.00 | The dollar value of Future Receipts that Merchant agrees to sell to Purchaser. |
| **Purchase Price** | $1,500,000.00 | The total amount that Purchaser agrees to pay for the Amount Sold. |
| **Future Receipts** | $2,162,500.70 | All sums received by or payable to Merchant from its customers as payment for Merchant's goods and/or services in the ordinary course of Merchant's business after Merchant receives the Purchase Price from Purchaser. Future Receipts include, among other things, payments by cash, physical or electronic checks, credit cards, charge cards, debit cards, other payment cards, ACH or other electronic payments, and any other form of funds transfer or payment. When the Payment Card Split Method of delivering Future Receipts is used, Purchaser will collect only Future Receipts processed through the Approved Card Processor (defined below). |
| **Direct Payments to Third Parties/Renewals** | N/A | Amounts paid to Purchaser and/or Other Funders. |
| **Total Amount Sent to Merchant** | $1,470,000.00 | The Purchase Price minus the Origination Fee (see below). |
| **Specified Percentage** | 20% | The percentage of Future Receipts that the Merchant is required to deliver to Purchaser until the entire Completion Amount is delivered to Purchaser in accordance with this Agreement. |
| **Weekly Delivery Amount** | $40,476.20 | The dollar amount that Merchant and Purchaser agree to be an approximation of the Specified Percentage of Future Receipts each week [day] as of the date of this Agreement, based upon the information provided by Merchant to Purchaser concerning Merchant's most recent receipts. |
| **Discount Factor** | 1.36 | The adjustment to the Amount Sold that enables us to calculate the Purchase Price. |
| **Origination Fees** | $30,000.00 | The amount Purchaser will deduct from the Purchase Price and retain to compensate it for due diligence and other costs in evaluating whether to purchase the Amount Sold. |
| **Repurchase Price (applicable discounts)** | 1.14 @ 1 month(s) 1.17 @ 2 month(s) 1.19 @ 3 month(s) 1.22 @ 4 month(s) 1.24 @ 5 month(s) | The discounted price Merchant may pay to end this financing transaction early by repurchasing Future Receipts sold to Purchaser but not yet delivered. The Repurchase Price is equal to the undelivered portion of the Amount Sold divided by the discount factor set forth in the column to the left for each month following the Commencement Date. |
| **Good Faith Estimate of Term** | 12 Months | This Agreement has no term. However, based on your historical revenue, we have estimated how long it will take you to deliver the Amount Sold to us under this Agreement. |
| **Commencement Date** | | The date when the Purchase Price is paid to Merchant. |
| **Business Day** | | Monday through Friday except bank holidays. |

**Note: The bold type terms in the tables above and below shall constitute defined terms with respect to this Agreement. PLEASE NOTE THAT THE PURCHASER WILL NOT TAKE MORE THAN THE EXPECTED WEEKLY REMITTANCE WITHOUT THE CONSENT OF THE MERCHANT.**

I. **SALE OF FUTURE RECEIPTS; PAYMENT OF PURCHASE PRICE:**

1. **Sale of Future Receipts; Not a Loan.** In exchange for the Purchase Price, Merchant hereby sells, assigns, transfers and conveys (hereinafter, the "Sale") to Purchaser all of Merchant's right, title and interest in and to the Specified Percentage of its Future Receipts until the Completion Amount is delivered to Purchaser. This Sale is made without recourse against Merchant and Guarantor except as specifically set forth in this Agreement. By virtue of this Agreement, Merchant transfers to Purchaser full and complete ownership of the Amount Sold and Merchant retains no legal or equitable interest therein. Merchant and Purchaser agree that the Purchase Price is payment for the assignment and sale of the Amount Sold and that this transaction is not intended to be, nor shall it be construed as, a loan from Purchaser to Merchant. Furthermore, Purchaser's ability to collect the Amount Sold is contingent on the continued operation of Merchant's business, and the timing of deliveries of the Specified Percentage of Future Receipts will depend on how quickly Merchant's business generates Future Receipts. **Merchant and Guarantor expressly agree not to take the position that this transaction is a loan, and they expressly waive any and all claims and defenses based on that position in any action or proceeding arising out of this Agreement, including without limitation claims or defenses of usury.**

2. **Payment of Purchase Price.**
   a. Subject to the satisfactory completion of Purchaser's due diligence (in its discretion), Purchaser shall pay the Purchase Price minus the Origination Fee to Merchant promptly after the date of this Agreement, subject to Section 2(b) below.
   b. If Merchant previously sold Future Receipts to Purchaser but has not yet remitted the full Completion Amount pursuant to the prior transaction, Merchant hereby requests to repurchase the undelivered balance of the Amount Sold from that transaction and directs Purchaser to deduct the repurchase price from the Purchase Price and apply it to complete the prior transaction. Similarly, if Merchant previously obtained a loan from Purchaser and has a balance due on such loan, Merchant hereby instructs Purchaser to deduct the balance due on the

NYSCEF DOC. NO. 2                                                                 RECEIVED NYSCEF: 11/23/2021

prior loan from the Purchase Price and apply it to pay off the prior loan. In the event that the agreement for the prior sale of Future Receipts does not permit repurchase of any portion of the amount sold, such agreement is hereby amended to permit repurchase on the same terms as set forth in this Agreement.

## II. DELIVERY OF AMOUNT SOLD:

3. **Method of Delivery of Amount Sold.** Purchaser offers three methods by which Merchant may deliver the Specified Percentage of its Future Receipts to Purchaser: weekly ACH debits by Purchaser from Merchant's bank account, weekly remittances from Merchant's payment card processor, and a lockbox arrangement. Each of these methods is described below. The method to be used initially is specified on the first page of this Agreement. The method of delivery may be changed by written agreement between Purchaser and Merchant.

    a.

        Direct Debit Method.
        Under the Direct Debit Method, Merchant agrees to deposit all Future Receipts into one (and only one) bank account which shall be preapproved by Purchaser (the "Approved Bank Account"). Merchant shall execute an ACH Authorization allowing Purchaser to debit directly from the Approved Bank Account each week the weekly Delivery Amount via ACH debit, as specified below.

    b.

        Payment Card Split Method.
        Under the Payment Card Split Method, Merchant shall exclusively use a single Approved Card Processor (defined below) to process all payments made by credit, debit, and other payment cards for Merchant's goods and services. Merchant shall instruct such Approved Card Processor to remit weekly to Purchaser the Specified Percentage of the Future Receipts for that week, and to remit the balance (less any fees charged by the Approved Card Processor) to Merchant.

    c.

        Lockbox Method.
        Under the Lockbox Method, Merchant agrees to deposit all Future Receipts into a special bank account established jointly by Purchaser and Merchant in accordance with a lockbox arrangement among Merchant, Purchaser and a banking institution chosen by Purchaser (the "Lockbox Account"), and Purchaser shall debit each week the weekly Delivery Amount from the Lockbox Account.

4. **Direct Debit Method and Lockbox Method Provisions.** The following terms apply if either the Direct Debit Method or the Lockbox Method is used, unless otherwise specified herein.

    a.  Weekly Delivery Amount. Purchaser and Merchant agree that, for efficiency purposes, Merchant may deliver the Specified Percentage of Future Receipts each week by remitting the WeeklyDelivery Amount, which Purchaser has calculated to be roughly equivalent to the Specified Percentage of Merchant's historical revenue each week. Purchaser, Merchant, and Guarantor acknowledge that Merchant's a ctual Future Receipts may vary each week or from Merchant's historical revenue, but they agree that the Weekly Delivery Amount is a fair and reasonable estimate of the Specified Percentage of Future Receipts. The Weekly Delivery Amount may be adjusted as set forth in Section 11. Merchant also has the right to reconcile any difference between the Weekly Delivery Amounts received in a given four-week period and the Specified Percentage of Future Receipts actually generated during that four-week period, as set forth in Sections 10 and 11.

At any time during the term of this Agreement, Purchaser may change the method by which it will accept the Weekly Delivery by providing Merchant with written instructions of a new method of delivery of Weekly Delivery to Purchaser.

5. **Timing of Weekly Deliveries.** Merchant hereby authorizes Purchaser to debit the Weekly Delivery Amount from the Approved Bank Account or the Lockbox Account, as applicable, via ACH or electronic checks once each week on the same day of the week as the Commencement Date. If a debit is scheduled to occur on a bank holiday, the debit shall be made on the following Business Day. Debits of the Weekly Delivery Amount shall commence on a date selected by Purchaser which shall be no later than 15 days following the Commencement Date. Weekly deliveries shall continue until Purchaser has received the Completion Amount, unless Merchant files for bankruptcy and/or goes out of business in the ordinary course, without first committing a Bad Act (as defined below). In the event that the final weekly delivery results in Purchaser receiving more than Amount Sold (not including fees), Purchaser shall refund any amount in excess of the Amount Sold (not including fees) within 5 business days of the final weekly delivery.

6. **Approved Bank Account.** If the Direct Debit Method is used, and for the purpose of allowing Purchaser to debit any fees due under this Agreement if the Payment Card Split Method is used, Merchant designates the bank account below as the Approved Bank Account, subject to approval by Purchaser. Merchant agrees to designate a different bank account acceptable to Purchaser if Purchaser does not approve the account designated below. In the event the Approved Bank Account becomes unavailable or Purchaser requests that a different bank account be used for any reason (such as difficulties debiting the Approved Bank Account from such bank account), Merchant shall arrange for another Approved Bank Account immediately, and in no event later than five calendar days after the prior account becomes unavailable or Purchaser requests the designation of a new Approved Bank Account. If any weekly delivery (or multiple weekly deliveries) required under the Direct Debit Method does not occur due to a change in the Approved Bank Account, Purchaser may debit the missed weekly deliveries together with the next weekly delivery.

**Account Number:** ___4002003756_____    **Routing Number:** ___063114661_____

7. **Lockbox Account.** If the Lockbox Method is used, Merchant hereby authorizes Purchaser to initiate a lockbox arrangement and to instruct Merchant's Approved Card Processor and Merchant's invoiced customers/clients/vendees to deposit all sums due to Merchant from each of those parties directly to the Lockbox Account. If required, Merchant shall enter into a lockbox agreement with Purchaser and the banking institution chosen by Purchaser, and complete any additional paperwork, for the purpose of establishing the Lockbox Account.

8. **Third Party Appointment and Authorization.** By signing below, Merchant acknowledges that Purchaser may, at any time, at Purchaser's sole discretion, and without prior notice, appoint a third party, which may be an affiliate of Purchaser, including, without limitation, Kinetic Direct Funding, LLC (such third party being the "Servicing Agent") to perform any or all of the actions authorized by the ACH Authorization and the Agreement. Merchant further agrees and acknowledges that Servicing Agent shall have all of the same rights, responsibilities, and authorizations granted to Purchaser by the ACH Authorization and the Agreement. For purposes of clarity, any Servicing Agent may perform any and all activities to service the Agreement, including the collection of Future Receipts (as set forth above) and fees, as if it was the Purchaser.

9. **Fees Associated with Weekly Deliveries.** It shall be Merchant's exclusive responsibility to pay to its banking institution and/or Purchaser's

banking institution directly (or to compensate Purchaser if it is charged) all fees, charges and expenses incurred by either Merchant or Purchaser due to rejected electronic checks or ACH debit attempts, overdrafts or rejections by Merchant's banking institution of the transactions contemplated by this Agreement.

### 10. **Merchant's Right to Reconciliation of Weekly Deliveries.**

    a. Merchant shall have the right, in its sole and absolute discretion but subject to the provisions of Section 11 below, to request retroactive reconciliation of any difference between the Weekly Delivery Amounts received by Purchaser through the four weekly deliveries immediately preceding the day when such request for reconciliation is received by Purchaser (each such four-week period, a "Reconciliation Month") and the Specified Percentage of Future Receipts actually generated during that Reconciliation Month.

    b. Purchaser will perform each timely requested reconciliation (each, a "Reconciliation") within five (5) Business Days following its receipt of the Merchant's request for reconciliation by either crediting or debiting the difference back to or from the Approved Bank Account or the Lockbox Account, as applicable, so that the total amount debited by Purchaser from the Approved Bank Account or the Lockbox Account (as applicable) during the Reconciliation Month at issue is equal to the Specified Percentage of the Future Receipts that Merchant actually collected during the Reconciliation Month at issue.

## III. **Request for Reconciliation Procedure.**

### 11. **Merchant's Right for Reconciliation of Weekly Deliveries.**

    a. It shall be Merchant's sole responsibility and right hereunder to initiate Reconciliation of Merchant's actual Future Receipts during any Reconciliation Month by sending a request for reconciliation to Purchaser.

    b. Any such request for Reconciliation of Merchant's Weekly receipts for a specific Reconciliation Month shall include a copy of Merchant's bank statement(s) and credit card processing statement(s) for the Reconciliation Month at issue, and must be received by Purchaser via email at customer.service@libertasfunding.com within five (5) Business Days after the last day of the Reconciliation Month at issue (time being of the essence). Any request for Reconciliation received after this deadline will not be honored.

    c. Merchant shall have the right to request Reconciliation as many times during the term of this Agreement as it deems proper, and Purchaser shall comply with such request, provided that:

        i. Each such request is made in accordance with the terms of this Section 11.

        ii. If a request for Reconciliation is timely made after Purchaser has received the Completion Amount, and the Reconciliation results in part of the Completion Amount being refunded to Merchant, then Purchaser shall continue to receive weekly deliveries until it receives the Completion Amount.

        iii. If Purchaser becomes aware that it has received funds that it is not entitled to, then Purchaser shall return those funds to the Merchant without request by the Merchant for reconciliation as set forth above.

    d. Unless Purchaser has received the Completion Amount, Purchaser is entitled to continue receiving weekly deliveries whether or not Merchant has made a request for Reconciliation. Merchant agrees not to take any action to interfere with weekly deliveries based on the pendency of a request for Reconciliation.

### 12. **Adjustment of Weekly Delivery Amount.**

    a. If a Reconciliation is performed that results in a refund to the Merchant of at least 20% of the aggregate Weekly Delivery Amounts received by Purchaser during the applicable Reconciliation Month, Merchant shall have the option to request, subject to the requirements of Section 13 below, modification ("Adjustment") of the Weekly Delivery Amount on a going-forward basis. Purchaser in its sole and absolute discretion may allow a temporary Adjustment upon Merchant's proof of circumstances warranting such Adjustment, such as a natural disaster requiring temporary closure of Merchant's business. After an Adjustment is granted, the adjusted Weekly Delivery Amount shall replace and supersede the amount of the Weekly Delivery Amount set forth in the preamble of this Agreement and future weekly deliveries shall be made in the adjusted amount. All Adjustments made in accordance with this section or other sections of this Agreement, shall be effective for one-month, after which time, the Merchant must provide Purchaser with its bank statements each month to allow Purchaser to re-evaluate the Merchant's information to determine whether a continued Adjustment is warranted.

    b. The Adjustment of the Weekly Delivery Amount shall be performed by Purchaser within five (5) Business Days following its receipt of the Merchant's request for Adjustment.

### 13. **Request for Adjustment Procedure.**

    a. It shall be Merchant's sole responsibility and right to initiate the Adjustment by sending a request for Adjustment to Purchaser.

    b. A request for Adjustment (an "Adjustment Request") shall be in writing, shall include copies of: (i) Merchant's three (3) consecutive bank statements for the Approved Bank Account or Lockbox Account, as applicable, immediately preceding the date of Purchaser's receipt of the Adjustment Request; (ii) Merchant's three (3) consecutive payment card processing statements immediately preceding the date of Purchaser's receipt of the Adjustment Request; and/or (iii) Merchant's bank statements and payment card processing statements previously provided by Merchant to Purchaser when applying to sell Future Receipts to Purchaser, or when applying for the most recent Adjustment that was made, if applicable. The Adjustment Request shall be sent by email to Purchaser at customer.service@libertasfunding.com within five (5) Business Days after the date that is the later of the last day for which activity is shown on the latest bank statement enclosed with the Adjustment Request and the last day for which activity is shown on the latest card processing statement enclosed with the Adjustment Request (time being of the essence). Any Adjustment Request received after this deadline will not be honored.

    c. Merchant may request Adjustment of the Weekly Delivery Amount as many times as it deems proper, and Purchaser shall comply with such Adjustment Requests, provided that:

        i. Each Adjustment Request is made in accordance with the requirements set forth in this Section 12;

        ii. No Adjustment Request may be made after Purchaser has received the Completion Amount; and

        iii. Unless Purchaser has received the Completion Amount, Purchaser is entitled to continue receiving weekly deliveries whether or not Merchant has made an Adjustment Request. Merchant agrees not to take any action to interfere with weekly deliveries based on the pendency of an Adjustment Request.

## IV. **Payment Card Split Method Provisions.** The following terms (see Sections 14-16) apply if the Payment Cared Split Method is used, unless otherwise specified herein.

14. **Approved Card Processor.** Merchant agrees to enter into a payment card processing agreement with a payment card processor approved by Purchaser (the "Approved Card Processor") in order to obtain card processing services for credit cards, charge cards, debit cards, prepaid cards, or other payment cards used to purchase Merchant's goods and/or services. If Merchant has entered into a payment card processing agreement before the date of this Agreement, Merchant may request that Purchaser review such agreement and any other information it deems pertinent for approval of the existing payment card processor in the sole and absolute discretion of Purchaser. Merchant agrees to process all of its payment card transactions through the Approved Card Processor, and not to switch to a different payment card processor or use an additional payment card processor without Purchaser's express written consent. If Purchaser permits Merchant to use a different payment card processor, the n ew processor shall become the Approved Card Processor. In the event the Approved Card Processor becomes unavailable or Purchaser requests that a different payment card processor be used for any reason (such as the Approved Card Processor failing to timely deliver the Specified Percentage of Future Receipts to Purchaser on a consistent basis), Merchant shall arrange for another Approved Card Processor immediately, and in no event later than five calendar days after the Approved Card Processor becomes unavailable or Purchaser requests the designation of a new Approved Card Processor.

15. **Processing Arrangement.** Merchant hereby authorizes and directs the Approved Card Processor, and any other processor, acquirer, service provider, or financial institution taking custody of, holding, possessing, or issuing payment instructions with respect to Future Receipts (together, the "Receipts Custodians") to deliver the Specified Percentage of Future Receipts on each Business Day (the "Daily Amount") to Purchaser rather than Merchant until Purchaser has received the Completion Amount, or, in the event that Purchaser declares the entire Completion Amount to be deliverable based on a breach of this Agreement, to deliver this amount. On days when banks are not open, the Specified Percentage will be delivered to Purchaser on the next banking day. For example, the Specified Percentage for Friday, Saturday, and Sunday will be delivered on the following Monday (or Tuesday if Monday is a bank holiday). Merchant acknowledges that the Approved Card Processor will be acting on behalf of Purchaser to collect the Specified Percentage of Future Receipts. Merchant agrees that the Future Receipts sold under this Agreement are Purchaser's property. Purchaser shall have no obligation to refund or return the Amount Sold or any portion thereof to Merchant in the event that the Approved Card Processor or any other Receipts Custodian initiates a refund, credit, reversal, or chargeback of a transaction subject to this Agreement, as such adjustments typically are netted against future card volume. Merchant agrees that when a Receipts Custodian takes custody of, holds, possesses, or issues payment instructions with respect to Future Receipts, it does so in trust for Purchaser. If there has not been a default, a Receipts Custodian will not deliver any particular day's Daily Amount to us if that Daily Amount has already been delivered to us by another Receipts Custodian. **Merchant agrees that it does not have the right to revoke or otherwise seek to override the authorization and direction set forth in this section and that this authorization may only be revoked by Purchaser.** You agree that a Receipts Custodian may rely on any instructions issued by us with respect to the delivery of the Future Receipts, including an instruction to deliver all Future Receipts to us in the event we declare the Completion Amount to be deliverable based on a breach of this Agreement. You waive and release any and all claims you may have against any Receipts Custodian that are in any way related to the Receipts Custodian delivering Future Receipts to us as described in this section. You authorize each Receipts Custodian to provide us with any and all information we request about the Receivables that Receipts Custodian possesses or has access to, including without limitation information about daily volumes, number of transactions, distributions, chargebacks, offsets, withdrawals, and totals. **YOU, YOUR SUCCESSORS AND PERMITTED ASSIGNEES AND AFFILIATES, AGREE TO FOREVER DEFEND, PROTECT, INDEMNIFY AND HOLD HARMLESS PURCHASER, EACH RECEIPTS CUSTODIAN, AND THEIR AND OUR SUCCESSORS, ASSIGNS, OFFICERS, DIRECTORS, MANAGERS, MEMBERS, AFFILIATES, AND REPRESENTATIVES AGAINST ALL DAMAGES, EXPENSES, CLAIMS, SUITS, DEMANDS, COSTS, ATTORNEYS' FEES OR LOSSES ARISING OUT OF OR ALLEGED TO HAVE ARISEN OUT OF OR IN CONNECTION WITH DELIVERING FUTURE RECEIPTS TO US AS DESCRIBED IN THIS SECTION. IN NO EVENT WILL WE OR THE RECEIPTS CUSTODIANS BE LIABLE TO YOU OR TO ANY THIRD PARTY FOR ANY LOSS OF USE, REVENUE OR PROFIT OR LOSS OF DATA OR FOR ANY DIRECT, CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL OR PUNITIVE DAMAGES, WHETHER ARISING OUT OF BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE) OR OTHERWISE, REGARDLESS OF WHETHER SUCH DAMAGE WAS FORESEEABLE AND WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.** The Parties agree that any amounts due a Receipts Custodian under your agreement with such Receipts Custodian or otherwise take priority over amounts to be delivered to us under this Agreement. The Parties agree that each Receipts Custodian is a third-party beneficiary of this Agreement and may rely on this Agreement even though it is not a party to this Agreement. You grant to us an irrevocable power of attorney, coupled with an interest, and appoint us and our designees as your attorney-in-fact, to take any and all actions necessary or appropriate to direct any new or additional processor to make payment to us as contemplated by this Section.

   a. **Processing Trial.** After this Agreement has been executed by Purchaser and Merchant, Purchaser has the option in its sole and absolute discretion to conduct a processing trial (the "Processing Trial") to determine whether the Specified Percentage will be correctly processed and/or reported by the Approved Card Processor to Purchaser. If Purchaser elects to conduct a Processing Trial, Merchant acknowledges and agrees that Purchaser will decide in its sole and absolute discretion whether to purchase the Amount Sold after completion of the Processing Trial. If Purchaser elects not to do so, any amounts received by Purchaser during the Processing Trial shall be refunded to the Merchant.

V. 16. **MERCHANT'S OBLIGATIONS, COVENANTS, REPRESENTATIONS AND WARRANTIES** Merchant agrees, covenants, represents, and warrants as follows at the time it executes this Agreement and on a continuing basis until such time as Purchaser has received the Completion Amount or Merchant has filed for bankruptcy or gone out of business in the ordinary course:

   a. **Business Purpose; Use of Purchase Price. MERCHANT REPRESENTS AND WARRANTS THAT IT IS ENTERING INTO THIS AGREEMENT SOLELY FOR BUSINESS PURPOSES AND NOT FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.** Merchant agrees to use the Purchase Price exclusively for the benefit and advancement of Merchant's business operations and for no other purpose.

   b. **Financial Condition and Financial Information.** Merchant represents and warrants that its bank and financial statements, copies of which have been furnished to Purchaser, and future statements which may be furnished hereafter pursuant to this Agreement or upon Purchaser's request, fairly represent the financial condition of Merchant or other information set forth therein as of the dates such statements are issued, and prior to execution of the Agreement there have been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise Purchaser of any material adverse change in its financial condition, operation, or ownership. Purchaser may request statements at any time during the term of this Agreement and Merchant shall provide them to Purchaser within Five (5) Business Days. Merchant's failure to do so is a material breach of this Agreement.

   c. **Read Only Access to the Approved Bank Account and Approved Card Account.** Merchant hereby agrees that, until Purchaser has received the Completion Amount, Purchaser shall have the right to perform ongoing read-only electronic monitoring of transactions occurring in the Approved Bank Account and Merchant's account with the Approved Card Processor (the "Approved Card Account"). Merchant agrees to provide Purchaser all required online access codes for the Approved Bank Account and the Approved Card Account. If Purchaser's

electronic (online) access to Merchant's Approved Bank Account or the Approved Card Account is disabled for any reason, Merchant shall immediately and diligently undertake all steps required of it to restore Purchaser's access to both accounts. Merchant's failure to comply with the provisions of this Section 16 shall constitute Merchant's material breach of its obligations under this Agreement.

d. **Governmental Approvals.** Merchant represents and warrants that it is in compliance and, until Purchaser receives the Completion Amount, shall be in compliance with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.

e. **Good Standing.** Merchant represents and warrants that it is a corporation/limited liability company/limited partnership/other type of business entity that is in good standing and duly incorporated or otherwise organized and validly existing under the laws of its jurisdiction of incorporation or organization and has full power and authority necessary to carry its business as it is now being conducted.

f. **Authorization.** Merchant represents and warrants that it has all requisite power to execute, deliver and perform this Agreement and consummate the transactions contemplated hereunder; entering into this Agreement will not result in breach or violation of, or default under, any agreement or instrument by which Merchant is bound or any statute, rule, regulation, order, or other law to which Merchant is subject, nor require the obtaining of any consent, approval, permit or license from any governmental authority having jurisdiction over Merchant. All organizational and other proceedings required to be taken by Merchant to authorize the execution, delivery and performance of this Agreement have been taken. The person signing this Agreement on behalf of Merchant represents and warrants that he or she has full power and authority to bind Merchant to perform its obligations under this Agreement.

g. **Accounting Records and Tax Returns.** Merchant shall treat receipt of the Purchase Price and delivery of the Specified Percentage of Future Receipts in a manner consistent with its nature as a true sale of Future Receipts in its accounting records and tax returns and further agrees that Purchaser is entitled to audit Merchant's accounting records upon reasonable Notice in order to verify compliance. Merchant hereby waives any rights of privacy, confidentiality, or taxpayer privilege in any litigation or arbitration arising out of this Agreement in which Merchant asserts that this transaction is anything other than a sale of future receipts.

h. **Taxes; Workers Compensation Insurance.** Merchant will promptly pay, when due, all taxes, including, without limitation, income, employment, sales and use taxes, imposed upon Merchant's business by law, and will maintain workers compensation insurance required by applicable governmental authorities.

i. **Business Insurance.** Merchant will maintain general liability and business-interruption insurance in the amounts and against risks as are satisfactory to Purchaser and shall provide Purchaser proof of such insurance upon request.

j. **No Change of Business.** You will not materially change the goods or services you sell, materially change the nature of your business, change the business entity through which you carry on your business, change any of the locations where you operate your business, or change the name under which you do business without first notifying us and obtaining our prior written consent.

k. **No Closing of Business.** Merchant represents and warrants that it has no current plans to close its business either temporarily (for renovations, repairs or any other purpose), or permanently. Merchant agrees that, until Purchaser receives the Completion Amount, Merchant will not voluntarily close its business on a permanent or temporary basis for renovations, repairs, or any other purposes. Notwithstanding the foregoing, Merchant shall have the right to close its business temporarily if such closing is necessitated by a requirement to conduct renovations or repairs imposed upon Merchant's business by legal authorities having jurisdiction over Merchant's business (such as from a health department or fire department) or if such closing is necessitated by circumstances outside Merchant's reasonable control. Prior to any such temporary closure of its business, Merchant shall provide Purchaser ten (10) Business Days' advance notice, or as much notice as reasonably possible under the circumstances.

l. **No Pending Bankruptcy.** As of the date of Merchant's execution of this Agreement, Merchant is not insolvent, has not filed, and does not contemplate filing, any petition for bankruptcy protection under Title 11 of the United States Code, and there has been no involuntary bankruptcy petition brought or threatened against Merchant. Merchant represents that it has not consulted with a bankruptcy attorney on the issue of filing bankruptcy within the six-month period immediately preceding the date of this Agreement. A breach of any of these representations shall be a material breach of this Agreement. If you go out of business or become the subject of a voluntary or involuntary bankruptcy filing within forty-five (45) days of our purchasing the Amount Sold, you agree that there will be a rebuttable presumption of a material breach.

m. **Estoppel Certificate.** Each time that we request, you will, upon at least one (1) day's prior notice from us, execute, acknowledge and deliver to us and/or to any other person, person firm or corporation specified by us, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which all or any portion of the Amount Sold has been delivered.

n. **Unencumbered Future Receipts.** Merchant has and will continue to have good, complete and marketable title to all Future Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests other than those by virtue or entering into this Agreement. Merchant shall not sell Future Receipts or obtain any additional financing before Purchaser has received the Completion Amount without Purchaser's express written consent. Merchant shall not take any action inconsistent with or in derogation of Purchaser's ownership of the Amount Sold.

o. **No Default Under Contracts with Third Parties.** Merchant's execution of and/or performance of its obligations under this Agreement will not cause or create an event of default by Merchant under any contract which Merchant is or may become a party to, or otherwise violate any of Merchant's obligations to third parties.

p. **Right of Access.** In order to ensure Merchant's compliance with the terms of this Agreement, Merchant hereby grants Purchaser the right to enter, without notice, the premises of Merchant's business for the purpose of inspecting and checking Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and batch Merchant's Future Receipts to its Approved Card Processor and to ensure that Merchant has not violated any other provision of this Agreement. Furthermore, Merchant hereby grants Purchaser and its employees and consultants' access to Merchant's employees and records and all other items of property located at the Merchant's place of business during the term of this Agreement. Merchant hereby agrees to provide Purchaser, upon request, all and any information concerning Merchant's business operations, banking relationships, names and contact information of Merchant's suppliers, vendors and landlord(s), to allow Purchaser to interview any of those parties regarding any matters relevant to this Agreement.

q. **Phone Recordings and Contact.** Merchant agrees that any call between Merchant and Purchaser and its owners, managers, employees and agents may be recorded and/or monitored.

r. **Knowledge and Experience of Decision Makers.** The persons authorized to make management and financial decisions on behalf of Merchant with respect to this Agreement have such knowledge, experience and skill in financial and business matters in general and with respect to transactions of a nature similar to the one contemplated by this Agreement so as to be capable of evaluating the merits and risks of, and making an informed business decision with regard to, Merchant entering into this Agreement.

s. **Merchant's Due Diligence.** The person authorized to sign this Agreement on behalf of Merchant: (i) has received all information that such person deemed necessary to make an informed decision with respect to a transaction contemplated by this Agreement; and (ii) has had

288304 - 08/30/2021

unrestricted opportunity to make such investigation as such person desired pertaining to the transaction contemplated by this Agreement and verify any such information furnished to him or her by Purchaser.

t. **Arm's-Length Transaction.** The person signing this Agreement of behalf of Merchant: (a) has read and fully understands content of this Agreement; (b) has consulted to the extent he/she wished with Merchant's own counsel in connection with the entering into this Agreement; (c) he or she has made sufficient investigation and inquiry to determine whether this Agreement is fair and reasonable to Merchant, and whether this Agreement adequately reflects his or her understanding of its terms.

u. **Integration; No Reliance on Oral Representations.** This Agreement contains the entire agreement between Merchant and Purchaser with respect to the subject matter of this Agreement and supersedes each course of conduct previously pursued or acquiesced in, and each oral agreement and representation previously made, by the parties with respect thereto (if any), whether or not relied or acted upon. No course of performance or other conduct subsequently pursued or acquiesced in, and no oral agreement or representation subsequently made, whether or not relied or acted upon, and no usage of trade, whether or not relied or acted upon, shall amend this Agreement or impair or otherwise affect the parties' obligations pursuant to this Agreement or any rights and remedies of the parties to this Agreement.

## VI. PLEDGE OF SECURITY:

17. **Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Merchant to Purchaser pursuant to this Agreement are "accounts" or "payment intangibles" as those terms are defined in the Uniform Commercial Code in effect in the state in which Merchant is located (the "UCC"). Such Sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Merchant to Purchaser. To the extent the Future Receipts are "accounts" or "payment intangibles" then (i) the sale of the Future Receipts creates a security interest as defined in the UCC; (ii) this Agreement constitutes a "security agreement" under the UCC; and (iii) Purchaser has all the rights of a secured party under the UCC with respect to such Future Receipts. Merchant further agrees that, with or without an Event of Default, Purchaser may notify account debtors, or other persons obligated on the Future Receipts, on holding the Future Receipts of Merchant's sale of the Future Receipts and may instruct them to make payment or otherwise render performance to or for the benefit of Purchaser.

18. **Financing Statements.** Merchant authorizes Purchaser to file one or more UCC-1 forms consistent with the UCC to give notice that the Amount Sold is the sole property of Purchaser. The UCC filing may state that such sale is intended to be a sale and not an assignment for security and may state that Merchant is prohibited from obtaining any financing that impairs the value of the Amount Sold or Purchaser's ability to collect same. Merchant authorizes Purchaser to debit the Approved Bank Account or Lockbox Account, as applicable, for all costs incurred by Purchaser associated with the filing, amendment or termination of any UCC filings.

19. **Security.** You understand that we have the right to take delivery of the Future Receipts we purchased as they are generated in the ordinary course of your business. The Security Interest granted in this section is being given solely for the purpose of ensuring that you do not take any action to deprive us of that right. This Security Interest does not mean that we have made a loan to you, does not create a debt, and does not make you a debtor or us a creditor. As security for the prompt and complete performance of any and all obligations, covenants, and agreements of Merchant under this Agreement, now or hereafter arising from, out of, or relating to this Agreement, whether direct, indirect, contingent or otherwise (hereinafter referred to collectively as the "Merchant Obligations"), Merchant hereby pledges, assigns and hypothecates to Purchaser and grants to Purchaser a continuing, perfected and first priority lien upon and security interest in, to and under all of Merchant's right, title and interest in and to the following (collectively, the "Collateral"), whether now existing or hereafter from time to time acquired:

   a. all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the UCC, now or hereafter owned or acquired by Merchant; and

   b. all Merchant's proceeds, as that term is defined by Article 9 of the UCC.

20. **Termination of Pledge.** Upon the performance by Merchant in full of the Merchant Obligations, the security interest in the Collateral pursuant to this Pledge shall automatically terminate without any further act of either party being required, and all rights to the Collateral shall revert to Merchant. Upon any such termination, Purchaser will execute, acknowledge (where applicable) and deliver such satisfactions, releases and termination statements, as Merchant shall reasonably request.

21. **Representations with Respect to Collateral.** Merchant hereby represents and warrants to Purchaser that: the execution, delivery and performance by Merchant of this Pledge, and the remedies in respect of the Collateral under this Pledge (i) have been duly authorized; (ii) do not require the approval of any governmental authority or other third party or require any action of, or filing with, any governmental authority or other third party to authorize same (other than the filing of the UCC-1s); (iii) do not and shall not (A) violate or result in the breach of any provision of law or regulation, any order or decree of any court or other governmental authority, or (B) violate, result in the breach of or constitute a default under or conflict with any indenture, mortgage, deed of trust, agreement or any other instrument to which Merchant is a party or by which any of Merchant's assets (including, without limitation, the Collateral) are bound.

22. **Further Assurances.** Upon the request of Purchaser, Merchant at its sole cost and expense, shall execute and deliver all such further UCC-1s, continuation statements, assurances and assignments of the Collateral, and consents with respect to the pledge of the Collateral and the execution of this Pledge, and shall execute and deliver such further instruments, agreements and other documents and do such further acts and things, as Purchaser may request in order to more fully effectuate the purposes of this Pledge and the assignment of the Collateral and obtain the full benefits of this Pledge and the rights and powers herein created.

23. **Attorney-in-fact.** Merchant hereby authorizes Purchaser at any time to take any action and to execute any instrument, including without limitation to file one or more financing statements and/or continuation statements, to evidence and perfect the security interest created hereby and irrevocably appoints Purchaser as its true and lawful attorney-in-fact, which power of attorney shall be coupled with an interest, with full authority in the place and stead of Merchant and in the name of Merchant or otherwise, from time to time, in Purchaser's sole and absolute discretion, including without limitation (a) for the purpose of executing such statements in the name of and on behalf of Merchant, and thereafter filing any such financing and/or continuation statements and (b) to receive, endorse and collect all instruments made payable to Merchant.

## VII. EVENTS OF DEFAULT AND REMEDIES:

24. **Events of Default by Merchant.** The occurrence of any of the following events shall constitute an "Event of Default" by Merchant:

a. **Events of Default.**

b. **Bad Acts.** If you commit any of the following acts ("Bad Acts") without our prior written consent before we receive the Completion Amount, you will be in default:

 i. you sell, transfer or otherwise encumber or attempt to sell, transfer or otherwise encumber Future Receipts, whether or not such Future Receipts are part of the Amount Sold—sometimes referred to as "stacking" our Purchase Price with other funding companies;

 ii. you encumber or allow any encumbrance to attach to our interest in the Amount Sold;

 iii. you sell all or substantially all of your assets used in the operation of your business to a third party;

 iv. you materially change the operation of your business (e.g., changes in industry, concept, size, etc.);

 v. you stop accepting a particular method of payment while you remain open for business;

 vi. you change your legal name or jurisdiction of formation, or carry-on business through a different business entity;

 vii. you change, close, or terminate the Approved Bank Account or Approved Card Processor, or interfere with the lockbox arrangement, without our express written consent;

 viii. you do not obtain a replacement Approved Bank Account or Approved Card Processor acceptable to us within fifteen (15) days after your bank or processor terminates its relationship with you;

 ix. you process any card transaction through a payment card processor other than the Approved Card Processor;

 x. you provide us with false or misleading information about your business or revenue (in your application or otherwise) that is material to our decision to purchase Future Receipts from you;

 xi. you deposit or cause to be deposited by others Future Receipts into any account other than the Approved Bank Account or Lockbox Account, if applicable;

 xii. you take or fail to take an action that hinders our taking delivery of our Specified Percentage of Future Receipts from the Approved Bank Account, Lockbox Account, or any Receivables Custodian, as applicable;

 xiii. you disconnect or interfere with the operation of Purchaser's bank monitoring software; or

 xiv. you commit any act or omission specified in this Agreement to be a material breach. However, we will not consider any of these acts to be Bad Acts if they occur because you go out of business in the ordinary course. These Bad Acts are prohibited solely to protect our ability to collect the Amount Sold and receive the benefit of our bargain. They do not create any obligation for Merchant to deliver Future Receipts to Purchaser if they are simply not generated by Merchant's business.

c. **Other Breaches.** If you commit an act that is not a Bad Act but that otherwise violates a term or covenant in this Agreement (an "Other Breach"), you will be in default.

25. **Remedies.** If you commit a Bad Act, you will be liable to us in an amount in cash equal to (a) the undelivered portion of the Amount Sold, plus (b) any other fees and other amounts due to us under this Agreement, plus (c) any additional amounts you would owe us for committing an Other Breach. If you commit an Other Breach, you will be liable to us for all damages resulting from the Other Breach, including, but not limited to, our reasonable attorneys' fees, expenses and costs incurred in any proceeding pursued against you to recover the amounts due us under this Agreement. You agree to pay us the amounts due or we may (d) withdraw such amounts from the Approved Bank Account or Lockbox Account, as applicable, or any other account into which you deposit Future Receipts, via ACH or electronic checks; (e) direct the Approved Card Processor, any other Receipts Custodian, and/or any other payment card processor you use in violation of this Agreement to deliver all of your Future Receipts to us until we have received the amount due; (f) enforce our rights as a secured creditor under the UCC including, without limitation, notifying any of your account debtor(s) of our security interest; (g) enforce Guarantor's personal guaranty of performance provisions of this Agreement against the Guarantor(s) without first seeking recourse from Merchant; (h) commence a suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merch ant's and Guarantor's obligations hereunder or any other legal or equitable right or remedy including without limitation Purchaser's rights of a secured party under the UCC. All rights available to us are cumulative and not exclusive of any other remedies available to us in law or equity.

26. **Power of Attorney.** Each Merchant and Guarantor irrevocably appoints Purchaser and its representatives as their respective agents and attorneys-in-fact with full authority to take any action or execute any instrument or document to do the following: (A) to settle all obligations due to Purchaser from any payment card processor and/or account debtor(s) of Merchant; (B) upon occurrence of a Bad Act, to perform any and all such obligations of Merchant under this Agreement, including without limitation (i) to collect monies due or to become due under or in respect of any of the Collateral; (ii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) above; (iii) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to Purchaser; and (iv) to file any claims or take any action or institute any proceeding against Merchant and/or Guarantor which Purchaser may deem necessary for the collection of any portion of the undelivered Amount Sold from the Collateral, or otherwise to enforce its rights under this Agreement.

VIII. **ADDITIONAL TERMS:**

27. **Fees.** In addition to all other sums due to Purchaser under this Agreement, Merchant shall pay to Purchaser:

a. An Origination Fee of $30,000.00 upon entering into this Agreement as reimbursement of Purchaser's costs associated with entering into this Agreement (the cost of due diligence on the Merchant's business, financial and legal due diligence, etc.)

b. A Non-Sufficient Funds ("NSF") fee of $35 in each and every instance when delivery of the Weekly Delivery Amount to Purchaser has failed due to insufficient funds in the Merchant's Approved Bank Account or Lockbox Account, as applicable; provided, however, that no NSF fee shall be due when the delivery failed because Merchant's business did not generate sufficient Future Receipts to cover the Weekly Delivery Amount and Merchant promptly requested Reconciliation and/or Adjustment.

c. $100 in each and every instance when Merchant blocks Purchaser's access (or otherwise prevents Purchaser from accessing) Merchant's bank accounts.

d. $2,500 in each and every instance when, upon occurrence of an Event of Default, Purchaser shall have agreed to waive Merchant's default.

28. **Financial Condition.** Merchant and its Guarantor(s) authorize Purchaser and its agents to investigate their financial responsibility and history and will provide to Purchaser any bank or financial statements, tax returns, etc., as deems necessary prior to or at any time after execution of this Agreement. A photocopy or electronic image of this authorization will be deemed as acceptable for release of financial information. Purchaser is authorized to update such information and financial profiles from t ime to time as it deems appropriate.

29. **Transactional History.** Merchant shall execute written authorization(s) to their bank(s) to provide Purchaser with Merchant's banking and/or credit-card processing history.

30. **No Liability.** In no event shall Purchaser be liable for any claims asserted by Merchant or its Guarantor under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by Merchant and Guarantor(s).

31. **Right to Cancel.**

    i. Notwithstanding anything to the contrary set forth in this Agreement, Purchaser shall have the right to cancel this agreement any time prior to its delivery of the Purchase Price to Merchant and, upon such cancellation, this Agreement shall become null, and void and the parties shall have no obligation to, or rights against, each other, except that all sums delivered by Merchant to Purchaser on account of entering into this Agreement shall be promptly returned to Merchant.

    ii. Notwithstanding anything to the contrary set forth in this Agreement, in the event Merchant has not been in default under this Agreement, Merchant shall have the right to cancel this Agreement any time until the midnight of the second (2nd) Business Day following the date of its receipt of the Purchase Price by notifying Purchaser of such cancellation by notice sent in accordance with this Agreement. Upon timely delivering such cancellation notice to Purchaser, and further provided that Merchant has otherwise complied with the provisions of this Agreement, Merchant shall refund the entire amount of the Purchase Price back to Purchaser within five (5) Business Days following the date of Merchant's receipt of the Purchase Price. Upon such refund of the Purchase Price back to Purchaser, this Agreement shall become null and void and the parties shall have no remaining obligations to or rights against each other except that Purchaser shall have the right keep, as fair and adequate compensation for its costs of entering into this Agreement with Merchant, the origination fee and all Weekly Delivery Amounts received by Purchaser prior to the date when this Agreement is terminated.

IX. **GUARANTY OF PERFORMANCE OF MERCHANT'S OBLIGATIONS:**

32. **Guarantor's Representations.** Guarantor represents and warrants to Purchaser that:

    a. Guarantor is an owner, officer, or manager of Merchant and will directly benefit from Purchaser and Merchant entering into the Agreement.

    b. Guarantor understands and acknowledges that Purchaser is not willing to enter into the Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees prompt and complete performance of any and all liabilities, obligations, covenants or agreements of Merchant under this Agreement, now or hereafter arising from, out of or relating to this Agreement, whether direct, indirect, contingent or otherwise (hereinafter referred to collectively as the "Merchant Obligations").

33. **Guaranty of Merchant's Obligations.** Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Purchaser prompt, full, faithful, and complete performance and observance of all Merchant Obligations; and Guarantor unconditionally covenants to Purchaser that if Merchant shall at any time breach any of the Merchant Obligations, Guarantor shall perform (or cause to be performed) the Merchant Obligations and pay all damages and other amounts stipulated in this Agreement with respect to the non-performance of the Merchant Obligations, or any of them.

34. **Guarantor's Other Agreements.** Guarantor will not dispose, convey, sell or otherwise transfer, or cause Merchant to dispose, convey, sell or otherwise transfer, any material business assets of Merchant without the prior written consent of Purchaser, which consent may be withheld for any reason, until Purchaser has received the Completion Amount. Guarantor shall pay to Purchaser upon demand all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred as the result of, or incidental to, or relating to, the enforcement or protection of Purchaser's rights against Merchant and Guarantor under the Agreement. This Guaranty is binding upon Guarantor and Guarantor's heirs, legal representatives, successors and assigns and shall inure to the benefit of and may be enforced by the successors an assign of Purchaser. The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Merchant and Purchaser, or the existence of any defense, setoff or counterclaim, which Merchant may assert. Purchaser is hereby authorized, without notice or demand and without affecting the liability of Guarantor hereunder, to at any time renew or extend Merchant's obligations under the Agreement or otherwise modify, amend or change the terms of the Agreement.

35. **Two Or More Guarantors.** If there is more than one Guarantor, "Guarantor" in this Agreement shall mean all Guarantors and the obligations of the Guarantors hereunder shall be joint and several.

36. **Waiver; Remedies.** No failure on the part of Purchaser to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise of any other right. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event that Merchant fails to perform any obligation under the Agreement, Purchaser may enforce its rights under this Guaranty without first seeking to obtain performance for such default from Merchant or any other guarantor.

37. **Acknowledgment of Purchase.** Guarantor acknowledges and agrees that the Purchase Price paid by Purchaser to Merchant in exchange for the Amount Sold is adequate consideration for the purchase of the Amount Sold and is not a loan or financial accommodation from Purchaser to Merchant. Guarantor specifically acknowledges Purchaser is not a lender, bank, or credit card processor, and that Purchaser has not offered any loans to Merchant. Guarantor waives any claims or defenses of usury in any action arising out of this Agreement.

38. **Severability.** If for any reason any court of competent jurisdiction finds any provisions of this Agreement applicable to the Guarantor to be void or voidable, the parties agree that the court may reform such provision(s) to render the provision(s) enforceable ensuring that the restrictions and prohibitions contained in those provisions shall be effective to the fullest extent allowed under applicable law.

39. **Opportunity for Attorney Review.** Guarantor represents that he/she has carefully read this Agreement and has, or had an opportunity to, consult with his or her attorney. Guarantor understands the contents of this Agreement, signs it as his or her free act and deed and agrees to be bound by the provisions hereof.

X. **MISCELLANEOUS:**

40. **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by all parties.

288304 - 08/30/2021

41. **Assignment.** Purchaser may assign, transfer or sell its rights or delegate its duties hereunder, either in whole or in part without prior notice to the Merchant or the Guarantor. Neither Merchant nor Guarantor shall have the right to assign their respective rights or obligations under this Agreement without first obtaining Purchaser's written consent.

42. **Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective as of the date of receipt or declined receipt.

43. **Waiver Remedies.** No failure on the part of any party to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

44. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

45. **Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regard to any applicable principles of conflicts of law. Any lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted exclusively in any court sitting in New York State (the "Acceptable Forums"). Each party signing this Agreement agrees that the Acceptable Forums are convenient, and irrevocably submits to the jurisdiction of the Acceptable Forums and waives any and all objections to inconvenience of the jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

46. **Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been complied with and satisfied in full and this Agreement shall have terminated.

47. **Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

48. **Waiver of Class Action; Waiver of Jury Trial.** By entering into this agreement, the parties agree that they may bring claims against the other only in their individual capacity, and **THE PARTIES ARE EACH EXPRESSLY WAIVING ANY AND ALL RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER IN ANY CLASS ACTION, PUTATIVE OR PURPORTED CLASS ACTION, REPRESENTATIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION, OR SIMILAR ACTION RELATING TO ANY CLAIMS (AS HEREINAFTER DEFINED), WHETHER BROUGHT UNDER STATE OR FEDERAL LAW.** The parties are each expressly waiving any and all right to join or consolidate claims in any proceeding with those of any other person (except any obligors and guarantors of the same agreement). Further, **BY ENTERING INTO THIS AGREEMENT, THE PARTIES ARE EACH EXPRESSLY WAIVING THEIR RESPECTIVE RIGHTS TO A JURY TRIAL FOR ALL CLAIMS.** The term "Claim" means any claim, dispute, or controversy (whether based on contract, tort, statute, or otherwise, and whether seeking monetary or any form of non-monetary relief) arising out of or relating to this Agreement or the relationship between or among the parties (collectively, "Claims"). The term Claims is to be given its broadest possible meaning, and includes pre-existing, present, and future Claims, and Claims regarding the enforceability or scope of this waiver. For purposes of this waiver only, the term "party" means that party and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, agents, vendors, employees, officers, and directors. **THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.**

49. **Captions.** The captions in this Agreement are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

50. **Counterparts and Facsimile Signatures.** This Agreement can be signed in one or more counterparts, each of which shall constitute an original and all of which when take together shall constitute one and the same agreement. Signatures delivered via facsimile and/or via Portable Digital Format (PDF) shall be deemed acceptable for all purposes, including without limitation the evidentially purposes.

**The balance of this page left intentionally blank**

**MERCHANT NAME: ACM DEVELOPMENT, LLC, et al.**
(legal name of the business)

*Eric Mynhier*

By: Eric Mynhier (Aug 30, 2021 17:27 EDT)

Name: ERIC RAY MYNHIER
Title:   Owner
FEIN:


**Libertas Funding LLC**


By: _____

Name: Randy Saluck
Title: CEO, Libertas Funding LLC

**OWNER/GUARANTOR #1:**

*Eric Mynhier*

Eric Mynhier (Aug 30, 2021 17:27 EDT)

Name: ERIC RAY MYNHIER
SSN:

288304 - 08/30/2021

## Libertas Electronic Fund Transfer Authorization

This Libertas Electronic Fund Transfer Authorization (the "Authorization") supplements the foregoing concurrent Agreement of Sale of Future Receipts (the "Agreement"). Except as noted below, capitalized terms in this Authorization have the meaning set forth in the Agreement.

You irrevocably authorize us (which includes for the purposes of this authorization, our agents, service providers, successors, and assigns) to take delivery of each Weekly Delivery Amount by initiating an electronic fund transfer via the Automated Clearing House network or similar network (an "ACH") from the business deposit account specified below, any substitute account you later specify, or any other account containing your Future Receipts (collectively, the "Account") on or after the date the associated Future Receipts were created. You authorize us to initiate a single ACH for the combined amounts of different Weekly Delivery Amounts as permitted by the Agreement. You further authorize us initiate ACHs to the Account for any amounts that come due under the Agreement, including ACHs for the Completion Amount in the event you commit a Bad Act. You also authorize us to initiate ACH credits or debits to the Account to correct any errors we may make in processing a payment. In the event that an ACH is returned unpaid, you authorize us to reinitiate the ACH until it is paid and to initiate a separate ACH or to add to a reinitiated ACH the amount of any dishonored payment fee that we charge. You agree that you will not cancel this Authorization or instruct any depository holding Future Receipts we purchased to reject our ACHs. You promise that the Account specified below and any substitute Account you provide us is used for business purposes and not for personal, family or household purposes and that you are an authorized signor on these Accounts.

Business Deposit Account Information:

**Account Number:** _____    **Routing Number:** _____
**Depository Name:** Cogent Bank    **Depository City/State:** Orlando, FL. 32801

**Type of Account**
[✔] Business Checking   [ ] Business Savings
[ ] Other Business Acct. (specify): _____

By signing below, you agree to the terms of this Libertas Electronic Fund Transfer Authorization.

By their signatures below the parties agreed to be bound by this addendum.

**ACCEPTED AND AGREED:**

**Purchaser: Libertas Funding LLC**

By: _____

Name: Randy Saluck

Title: CEO, Libertas Funding LLC

**ACCEPTED AND AGREED:**

**Seller: ACM DEVELOPMENT, LLC, et al.**

By: X _Eric Mynhier_____

Name: ERIC RAY MYNHIER

Title: Owner_____

By: X _Eric Mynhier_____

Owner: ERIC RAY MYNHIER

288304 - 08/30/2021

## ADDENDUM TO CONTRACT

### Addendum to Merchant Agreement 288304

This is an addendum ("Addendum") to that certain merchant agreement (the "Merchant Agreement") entered into by and among Libertas Funding LLC (the "Purchaser"), ERIC RAY MYNHIER (the "Owner") and ACM DEVELOPMENT, LLC (the "Seller") dated as of August 30, 2021.

WHEREAS, the Purchaser, the Owner and Seller wish to modify the Merchant Agreement as set forth herein.

Now therefore, for good and valuable consideration, the parties agree as follows:

A. The Owner and the Seller are hereafter referred to collectively as the Merchant (the "Merchant").
B. Except as provided below, it is understood and agreed that the Merchant may repurchase Future Receipts sold to the Purchaser but not yet delivered to end this financing transaction.. The Repurchase Price for such early repurchase shall be set forth below, less the amount of any Weekly Deliveries made prior to the date of Repurchase, plus any unpaid fees or charges. Month 1 begins on the Commencement Date. August 30, 2021.
C. Except as provided in this addendum, all terms and conditions of the Merchant Agreement and the Supplement shall remain in full force and effect.
D. This addendum shall be bound by the laws of the state of New York.

**Note that the Repurchase Price for each month below is equal to the undelivered portion of the Amount Sold divided by the Discount Factor as set forth in the "Key Business Terms and Definitions" on page 2 in the "Repurchase Price" box.**

| Repurchase Month | Repurchase Price (the amount below LESS Weekly Deliveries collected by Purchaser) |
| --- | --- |
| 1 | $1,710,000.00 |
| 2 | $1,755,000.00 |
| 3 | $1,785,000.00 |
| 4 | $1,830,000.00 |
| 5 | $1,860,000.00 |

All other terms of the referenced Merchant Agreement remain unchanged.

By their signatures below the parties agreed to be bound by this addendum.

**ACCEPTED AND AGREED:**

**Purchaser: Libertas Funding LLC**

By: _____

Name: Randy Saluck

Title: CEO, Libertas Funding LLC

**ACCEPTED AND AGREED:**

**Seller: ACM DEVELOPMENT, LLC, et al.**

By: X *Eric Mynhier*

Name: ERIC RAY MYNHIER

Title: Owner

By: X *Eric Mynhier*

Owner: ERIC RAY MYNHIER

288304 - 08/30/2021



**Seller Definition Addendum to the Agreement of Sale of Future Receipts Dated:**

**August 30th, 2021**

Purchaser and Guarantor(s) hereby agree that "Merchant" is defined as follows:

**Name:** ACM DEVELOPMENT, LLC
**Address:** 562 BOWNESS AVE OCOEE, FL 34761
**FEIN:**

**Name:** LUCID TECH LLC
**Address:** 938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787 **FEIN:** 0

**Name:** EMPIRICAL RETAIL LLC
**Address:** 849 OAKLAND PARK BLVD WINTER GARDEN, FL 34787
**FEIN:** 0

**Name:** EUPHORIA RETAIL LLC
**Address:** 938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787 **FEIN:** 0

**Name:** NINETEEN SEVENTY FOUR LLC
**Address:** 938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787 **FEIN:** 0

**Name:** OMEGA ENTERPRISES LLC
**Address:** 938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787 **FEIN:** 0

**Name:** IRONSHIELD PAVING LLC
**Address:** 938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787 **FEIN:** 0

**Name:** RAD RETAIL LLC
**Address:** 938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787 **FEIN:** 0

**Name:** SUN FL ENTERPRISES LLC
**Address:** 849 OAKLAND PARK BLVD WINTER GARDEN, FL 34787
**FEIN:** 0

**Name:** LOLYPALOOZA ENTERPRISES LLC
**Address:** 938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787 **FEIN:** 0

**Name:** KINGDOM PROPERTY INVESTMENTS LLC
**Address:** 562 BOWNESS AVE OCOEE, FL 34761
**FEIN:** 0

**Name:** VORTEX RETAIL LLC
**Address:** 938 TILDEN OAKS TRAIL WINTER GARDEN, FL 34787 **FEIN:** 0

**ACM DEVELOPMENT, LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**LUCID TECH LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**EMPIRICAL RETAIL LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**EUPHORIA RETAIL LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**NINETEEN SEVENTY FOUR LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**OMEGA ENTERPRISES LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**IRONSHIELD PAVING LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**RAD RETAIL LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**SUN FL ENTERPRISES LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**LOLYPALOOZA ENTERPRISES LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name  Eric Mynhier _____

**KINGDOM PROPERTY INVESTMENTS LLC**

Agreed to by: _Eric Mynhier_ _____ (Signature), their  Owner _____ (Title)

Print Owner's Name ___Eric Mynhier_____

**VORTEX RETAIL LLC**

Agreed to by: _*Eric Mynhier*_____ (Signature), their ___Owner_____ (Title)

Print Owner's Name ___Eric Mynhier_____

**Purchaser: Libertas Funding LLC**

Agreed to by: _____ (Signature), its _____ (Title)

288304 - 08/30/2021

## ADDENDUM TO CONTRACT

### Addendum to Merchant Agreement 288304

**Purchase Price: $1,500,000.00 Purchased Percentage: 20% Purchased Amount: $2,040,000.00**

This is an addendum ("Addendum") to that certain merchant agreement 288304 (the "Merchant Agreement") entered into by and among Libertas Funding LLC (the "Purchaser"), ERIC RAY MYNHIER (the "Owner") and ACM DEVELOPMENT, LLC (the "Seller" or "Merchant") dated as of August 30, 2021

WHEREAS, the Purchaser and Seller wish to modify the Merchant Agreement as set forth herein.

Now therefore, for good and valuable consideration, the parties agree as follows:

A. Except as provided in this Addendum, all terms and conditions of the Merchant Agreement shall remain in full force and effect. All capitalized terms not defined in this Addendum shall have the meaning set forth in the Merchant Agreement.

B. Merchant acknowledges, accepts, and agrees that as long as the Seller has not delivered all of the WeeklyDeliveries in connection with the Merchant Agreement, the Merchant understands that taking an additional short-term (12 months or less in expected term) cash advance based on credit card receivables or an ACH-based cash advance or loan based on total sales or deposits with any company (other than the Purchaser or the Purchaser's wholly-owned subsidiaries) would constitute an event of default under the Merchant Agreement, unless the Merchant receives a written authorization from the Purchaser prior to it taking such additional financing.

C. Merchant acknowledges, accepts, and agrees that a breach of this addendum (particularly section B above) will constitute a breach/event of default of the Merchant Agreement and that doing so will result in either (i) the immediate acceleration of all Weekly Deliveries.

D. This Addendum shall be governed by the laws of the State of New York.

E. This Addendum may only be modified in writing by Purchaser and Merchant.

By their signatures below the parties agreed to be bound by this addendum.

**ACCEPTED AND AGREED:**                     **ACCEPTED AND AGREED:**

**Purchaser: Libertas Funding LLC**          **Seller: ACM DEVELOPMENT, LLC, et al.**

By: _____               By: X _*Eric Mynhier*_____

Name: Randy Saluck                           Name: ERIC RAY MYNHIER

Title: CEO, Libertas Funding LLC             Title: Owner

                                             By: X _*Eric Mynhier*_____

                                             Owner: ERIC RAY MYNHIER

288304 - 08/30/2021

# ACM_DEVELOPMENT_LLC-CONTRACT

**Final Audit Report**                        2021-08-30

| | |
|---|---|
| Created: | 2021-08-30 |
| By: | stips group (stips@libertasfunding.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAa8Vfp2jg5uCslp32M3MQDfLM28pfJCCc |

## "ACM_DEVELOPMENT_LLC-CONTRACT" History

Document created by stips group (stips@libertasfunding.com)
2021-08-30 - 8:57:47 PM GMT- IP address: 160.72.124.38

Document emailed to Eric Mynhier (eric@acmdev.net) for signature
2021-08-30 - 9:03:26 PM GMT

Email viewed by Eric Mynhier (eric@acmdev.net)
2021-08-30 - 9:09:20 PM GMT- IP address: 68.204.70.217

Document e-signed by Eric Mynhier (eric@acmdev.net)
Signature Date: 2021-08-30 - 9:27:40 PM GMT - Time Source: server- IP address: 68.204.70.217

Agreement completed.
2021-08-30 - 9:27:40 PM GMT

 Adobe Sign



**LIBERTAS**

412 W Putnam Ave, Greenwich CT 06830

## 4573 : ACM DEVELOPMENT, LLC

| Transaction Type | Payment Date | Payment Amount | Paid to Date | Balance |
|---|---|---|---|---|
| WIRE Credit Merchant | 2021-08-31 | -1000000.00 | 0.00 | 2040000.00 |
| WIRE Credit Merchant | 2021-09-01 | -470000.00 | 0.00 | 2040000.00 |
|  | 2021-09-02 |  | 0.00 | 2040000.00 |
|  | 2021-09-03 |  | 0.00 | 2040000.00 |
| ACH Debit Merchant - | 2021-09-07 | 40476.20 | 40476.20 | 1999523.80 |
|  | 2021-09-08 |  | 40476.20 | 1999523.80 |
|  | 2021-09-09 |  | 40476.20 | 1999523.80 |
|  | 2021-09-10 |  | 40476.20 | 1999523.80 |
|  | 2021-09-13 |  | 40476.20 | 1999523.80 |
| ACH Debit Merchant - | 2021-09-14 | 40476.20 | 80952.40 | 1959047.60 |
|  | 2021-09-15 |  | 80952.40 | 1959047.60 |
|  | 2021-09-16 |  | 80952.40 | 1959047.60 |
|  | 2021-09-17 |  | 80952.40 | 1959047.60 |
|  | 2021-09-20 |  | 80952.40 | 1959047.60 |
| ACH Debit Merchant - | 2021-09-21 | 40476.20 | 121428.60 | 1918571.40 |
|  | 2021-09-22 |  | 121428.60 | 1918571.40 |
|  | 2021-09-23 |  | 121428.60 | 1918571.40 |
|  | 2021-09-24 |  | 121428.60 | 1918571.40 |
|  | 2021-09-27 |  | 121428.60 | 1918571.40 |
| ACH Debit Merchant - | 2021-09-28 | 40476.20 | 161904.80 | 1878095.20 |
|  | 2021-09-29 |  | 161904.80 | 1878095.20 |
|  | 2021-09-30 |  | 161904.80 | 1878095.20 |
|  | 2021-10-01 |  | 161904.80 | 1878095.20 |
|  | 2021-10-04 |  | 161904.80 | 1878095.20 |
| ACH Debit Merchant - | 2021-10-05 | 40476.20 | 202381.00 | 1837619.00 |
|  | 2021-10-06 |  | 202381.00 | 1837619.00 |
|  | 2021-10-07 |  | 202381.00 | 1837619.00 |
|  | 2021-10-08 |  | 202381.00 | 1837619.00 |
| ACH Debit Merchant - | 2021-10-12 | 40476.20 | 242857.20 | 1797142.80 |
|  | 2021-10-13 |  | 242857.20 | 1797142.80 |
|  | 2021-10-14 |  | 242857.20 | 1797142.80 |
|  | 2021-10-15 |  | 242857.20 | 1797142.80 |
|  | 2021-10-18 |  | 242857.20 | 1797142.80 |
| ACH Debit Merchant - | 2021-10-19 | 40476.20 | 283333.40 | 1756666.60 |
|  | 2021-10-20 |  | 283333.40 | 1756666.60 |
|  | 2021-10-21 |  | 283333.40 | 1756666.60 |
|  | 2021-10-22 |  | 283333.40 | 1756666.60 |
|  | 2021-10-25 |  | 283333.40 | 1756666.60 |
| ACH Debit Merchant - | 2021-10-26 | 0.00 | 283333.40 | 1756666.60 |
|  | 2021-10-27 |  | 283333.40 |  |
| ACH Debit Merchant - | 2021-10-28 | 0.00 | 283333.40 | 1756666.60 |
| ACH Debit Merchant - | 2021-10-28 | 0.00 | 283333.40 | 1756666.60 |
| ACH Debit Merchant - | 2021-10-29 | 0.00 | 283333.40 | 1756666.60 |
|  | 2021-11-01 |  | 283333.40 |  |
| ACH Debit Merchant - | 2021-11-02 | 0.00 | 283333.40 | 1756666.60 |
|  | 2021-11-03 |  | 283333.40 | 1756666.60 |
|  | 2021-11-04 |  | 283333.40 | 1756666.60 |

| | | | | |
|---|---|---|---|---|
| | 2021-11-05 | | 283333.40 | 1756666.60 |
| | 2021-11-08 | | 283333.40 | 1756666.60 |
| ACH Debit Merchant - | 2021-11-09 | 0.00 | 283333.40 | 1756666.60 |
| | 2021-11-10 | | 283333.40 | 1756666.60 |
| | 2021-11-12 | | 283333.40 | 1756666.60 |
| | 2021-11-15 | | 283333.40 | 1756666.60 |
| ACH Debit Merchant - | 2021-11-16 | 40476.20 | 323809.60 | 1716190.40 |

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS

| Plaintiff / Petitioner: | |
|---|---|

LIBERTAS FUNDING, LLC

**AFFIDAVIT OF SERVICE**

Index No:
530150/2021

Defendant / Respondent:

ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL
LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC;
OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL
LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES
LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY
MYNHIER

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of
Florida.  That on Wed, Jan 12 2022 AT 07:53 PM AT 938 Tilden Oaks Trail, Winter Garden, Fl 34787 deponent served the within NOTICE OF
COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY
(Received Jan 11, 2022 at 1:31pm EST) on ERIC RAY MYNHIER

[X] **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person
described as said defendant therein.

[ ] **Corporation:** _____ a defendant, therein named, by delivering a true copy of each to _____
personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be
_____ thereof.

[ ] **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

[ ] **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or
a person of suitable age or discretion thereat, having called thereon; at _____

[ ] **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and
not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an
action against the person to be served, properly addressed to said defendant at defendant's: [ ] last known address,
_____ ; or, [ ] actual place of business, _____ and depositing said wrapper in a United States Post
Office or an official depository under the exclusive care and custody of the United States Post Office within the State of
_____ . Mailed on _____

[X] **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of
New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The
source of my information and the ground of my belief are the conversations and observations above narrated. Upon information
and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in
either the State or in the Federal statutes.

Description:

| Age: 48 | Ethnicity: Caucasian | Gender: Male | Weight: 170 lbs |
|---|---|---|---|
| Height: 6'0" | Hair: Gray | Eyes: | Relationship: |

Other   Current tenant at 849 Oakland Park Blvd Winter Garden, FL 34787, Rebecca, stated that Eric doesn't live at that address. He lives
at 938 Tilden Oaks Trail Winter Garden, Fl 34787.

Sworn to before me on   1/14/2022

_____
Dana Young

_____
Notary Public

Amber Millett
Notary Public
State of Florida
Comm# HH084597
Expires 1/25/2025

1 of 1

Case 1:22-cv-00787-HG-MMH   Document 1   Filed 02/11/22   Page 57 of 68 PageID #: 57

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS

**Plaintiff / Petitioner:**

LIBERTAS FUNDING, LLC

**Defendant / Respondent:**

ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY MYNHIER

**AFFIDAVIT OF SERVICE**

Index No:
530150/2021

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York. That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on OMEGA ENTERPRISES LLC

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:** OMEGA ENTERPRISES LLC a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____ .

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**
Age: 55    Ethnicity: Caucasian    Gender: Female    Weight: 125 lbs
Height: 5'5"    Hair: Brown    Eyes: _____    Relationship: Authorized Agent

Other   Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583694US.

Sworn to before me on   1-18-2022

_____
Samuel Christiansen

_____
Notary Public

OFFICIAL SEAL
NICOLLE C. CHRISTIANSEN
Notary Public-New York
No. 01CH6406751
My Commission Expires
SEPTEMBER 08, 20__

1 of 1

Case 1:22-cv-00787-HG-MMH Document 1 Filed 02/11/22 Page 58 of 68 PageID #: 58

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS

| | |
|---|---|
| Plaintiff / Petitioner:<br><br>LIBERTAS FUNDING, LLC<br><br>Defendant / Respondent:<br><br>ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY MYNHIER | **AFFIDAVIT OF SERVICE**<br><br>Index No:<br>530150/2021 |

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York. That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on SUN FL ENTERPRISES LLC.

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:** SUN FL ENTERPRISES LLC. a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____ :

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

Description:
Age: 55    Ethnicity: Caucasian    Gender: Female    Weight: 125 lbs
Height: 5'5"    Hair: Brown    Eyes: _____    Relationship: Authorized Agent

Other   Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583703US.

Sworn to before me on   1-18-2022

_____
Samuel Christiansen

_____
Notary Public

OFFICIAL SEAL
NICOLLE C. CHRISTIANSEN
Notary Public-New York
No. 01CH6408751
My Commission Expires
SEPTEMBER 08, 20__

NYSCEF DOC. NO. 7 RECEIVED NYSCEF: 01/19/2022

SUPREME COURT OF THE STATE OF NEW YORK COUNTY OF KINGS

| | |
|---|---|
| Plaintiff / Petitioner: | **AFFIDAVIT OF SERVICE** |
| LIBERTAS FUNDING, LLC | Index No: |
| Defendant / Respondent: | 530150/2021 |
| ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY MYNHIER | |

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York. That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on RAD RETAIL LLC

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:** RAD RETAIL LLC a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____ :

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

Description:
Age: 55   Ethnicity: Caucasian   Gender: Female   Weight: 125 lbs
Height: 5'5"   Hair: Brown   Eyes: _____   Relationship: Authorized Agent

Other   Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583694US.

Sworn to before me on 1-18-2022

_____   _____
Samuel Christiansen   Notary Public

OFFICIAL SEAL
NICOLLE C. CHRISTIANSEN
Notary Public-New York
No. 01CH6408751
My Commission Expires
SEPTEMBER 08, 20__

1 of 1

SUPREME COURT OF THE STATE OF NEW YORK                                                COUNTY OF KINGS

Plaintiff / Petitioner:                                          **AFFIDAVIT OF SERVICE**

LIBERTAS FUNDING, LLC                                                  Index No:
                                                                      530150/2021
Defendant / Respondent:

ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL
LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC;
OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL
LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES
LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY
MYNHIER

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of
New York. That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF
COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY
(Received Jan 11, 2022 at 1:12pm EST) on LUCID TECH LLC

☐   **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person
    described as said defendant therein.

☒   **Corporation:** LUCID TECH LLC a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally,
    deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent
    thereof.

☐   **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐   **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or
    a person of suitable age or discretion thereat, having called thereon; at

☐   **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and
    not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an
    action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address,
    _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post
    Office or an official depository under the exclusive care and custody of the United States Post Office within the State of
    _____ . Mailed on _____ :

☐   **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of
    New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The
    source of my information and the ground of my belief are the conversations and observations above narrated. Upon information
    and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in
    either the State or in the Federal statutes.

Description:
Age: 55          Ethnicity: Caucasian                    Gender: Female              Weight: 125 lbs
Height: 5'5"     Hair: Brown                             Eyes:                       Relationship: Authorized
                                                                                                    Agent
Other   Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with
        tracking number RF248583694US.

                                                    Sworn to before me on   1-18-2022

_____                            _____
Samuel Christiansen                                 Notary Public



OFFICIAL SEAL
NICOLLE C. CHRISTIANSEN
Notary Public-New York
No. 01CH8408781
My Commission Expires
SEPTEMBER 08, 20 24

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS

| | |
|---|---|
| Plaintiff / Petitioner: | **AFFIDAVIT OF SERVICE** |
| LIBERTAS FUNDING, LLC | Index No: |
| Defendant / Respondent: | 530150/2021 |
| ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY MYNHIER | |

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York.  That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany, NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on NINETEEN SEVENTY FOUR LLC

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:**   NINETEEN SEVENTY FOUR LLC a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____ :

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**
| | | | | | | |
|---|---|---|---|---|---|---|
| Age:  55 | Ethnicity:  Caucasian | | Gender:  Female | | Weight:  125 lbs | |
| Height:  5'5" | Hair:  Brown | | Eyes: | | Relationship:  Authorized Agent | |

Other   Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583694US.

Sworn to before me on _1-18-2022_

Samuel Christiansen

Notary Public

OFFICIAL SEAL
NICOLLE C. CHRISTIANSEN
Notary Public-New York
No. 01CH6408751
My Commission Expires
SEPTEMBER 08, 20 2 4

SUPREME COURT OF THE STATE OF NEW YORK                                                COUNTY OF KINGS

Plaintiff / Petitioner:                                      **AFFIDAVIT OF SERVICE**

LIBERTAS FUNDING, LLC                                        Index No:
                                                             530150/2021
Defendant / Respondent:

ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL
LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC;
OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL
LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES
LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY
MYNHIER

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York.  That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on LOLYPALOOZA ENTERPRISES LLC.

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:**  LOLYPALOOZA ENTERPRISES LLC. a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____ :

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**
Age:  55          Ethnicity:  Caucasian          Gender:  Female          Weight:  125 lbs
Height:  5'5"                    Hair:  Brown                  Eyes:          Relationship:  Authorized Agent

Other     Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583694US.

Sworn to before me on          1-18-2022

_____                      _____
Samuel Christiansen                    Notary Public

OFFICIAL SEAL
NICOLLE O. CHRISTIANSEN
Notary Public-New York
No. 01CH6408751
My Commission Expires
SEPTEMBER 08, 20__

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS

**AFFIDAVIT OF SERVICE**

Index No:
530150/2021

Plaintiff / Petitioner:

LIBERTAS FUNDING, LLC

Defendant / Respondent:

ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL
LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC;
OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL
LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES
LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY
MYNHIER

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York.  That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on KINGDOM PROPERTY INVESTMENTS LLC

| | |
|---|---|
| ☐ | **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein. |
| ☒ | **Corporation:**   KINGDOM PROPERTY INVESTMENTS LLC a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof. |
| ☐ | **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion. |
| ☐ | **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____ |
| ☐ | **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____: |
| ☐ | **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes. |

Description:

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Age: 55 | Ethnicity: Caucasian | | | Gender: Female | | Weight: 125 lbs | |
| Height: 5'5" | | Hair: Brown | | Eyes: | | Relationship: Authorized Agent | |

Other   Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583694US.

Sworn to before me on   *1-18-2022*

_____
Samuel Christiansen

_____
Notary Public

OFFICIAL SEAL
NICOLLE C. CHRISTIANSEN
Notary Public-New York
No. 01CH6408751
My Commission Expires
SEPTEMBER 08, 20__

SUPREME COURT OF THE STATE OF NEW YORK                                                                    COUNTY OF KINGS

| | |
|---|---|
| **Plaintiff / Petitioner:** | **AFFIDAVIT OF SERVICE** |
| LIBERTAS FUNDING, LLC | **Index No:** |
| **Defendant / Respondent:** | 530150/2021 |
| ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY MYNHIER | |

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York.  That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on IRONSHIELD PAVING LLC

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:**  IRONSHIELD PAVING LLC a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____ .

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

| Description: | | | | | |
|---|---|---|---|---|---|
| Age: 55 | Ethnicity: Caucasian | | Gender: Female | | Weight: 125 lbs |
| Height: 5'5" | Hair: Brown | | Eyes: | | Relationship: Authorized Agent |

Other   Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583694US.

Sworn to before me on   *1-18-2022*

_____                                    _____
Samuel Christiansen                                                          Notary Public

OFFICIAL SEAL
NICOLLE C. CHRISTIANSEN
Notary Public-New York
No. 01CH6408761
My Commission Expires
SEPTEMBER 08, 20__

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS

Plaintiff / Petitioner:

LIBERTAS FUNDING, LLC

Defendant / Respondent:

ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL
LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC;
OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL
LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES
LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY
MYNHIER

**AFFIDAVIT OF SERVICE**

Index No:
530150/2021

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York.  That on Wed, Jan 12 2022 AT 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on EUPHORIA RETAIL LLC

| | |
|---|---|
| ☐ | **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein. |
| ☒ | **Corporation:**   EUPHORIA RETAIL LLC a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof. |
| ☐ | **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion. |
| ☐ | **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____ |
| ☐ | **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____ . |
| ☐ | **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes. |

**Description:**

| | | | | | |
|---|---|---|---|---|---|
| Age:  55 | Ethnicity:  Caucasian | | Gender:  Female | Weight:  125 lbs | |
| Height:  5'5" | Hair:  Brown | | Eyes: | Relationship:  Authorized Agent | |

Other    Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583694US.

Sworn to before me on   1-18-2022

_____
Samuel Christiansen

_____
Notary Public

OFFICIAL SEAL
NICOLLE C. CHRISTIANSEN
Notary Public-New York
No. 01CH6409761
My Commission Expires
SEPTEMBER 08, 20 24

NYSCEF DOC. NO. 14                                                                                    RECEIVED NYSCEF: 01/19/2022

SUPREME COURT OF THE STATE OF NEW YORK                                                  COUNTY OF KINGS

| | |
|---|---|
| Plaintiff / Petitioner: | **AFFIDAVIT OF SERVICE** |
| LIBERTAS FUNDING, LLC | Index No: |
| Defendant / Respondent: | 530150/2021 |
| ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC; ERIC RAY MYNHIER | |

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides in the state of New York.  That on Wed, Jan 12 2022 at 01:50 PM AT 1 Commerce Plaza, Albany , NY 12260 deponent served the within NOTICE OF COMMENCEMENT OF ACTION SUBJECT TO MANDATORY ELECTRONIC FILING; SUMMONS; VERIFIED COMPLAINT; VERIFICATION BY A PARTY (Received Jan 11, 2022 at 1:12pm EST) on EMPIRICAL RETAIL LLC

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:**   EMPIRICAL RETAIL LLC a defendant, therein named, by delivering a true copy of each to Nancy Dougherty personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized Agent thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☐ **Mailing:** Deponent also enclosed a copy of same, in a postpaid sealed wrapper bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, properly addressed to said defendant at defendant's: ☐ last known address, _____ ; or, ☐ actual place of business, _____ and depositing said wrapper in a United States Post Office or an official depository under the exclusive care and custody of the United States Post Office within the State of _____ . Mailed on _____ .

☐ **Military Service:** I asked the person spoken to whether defendant was in active military service of the United States or of the State of New York in any capacity whatever and received a negative reply. *Defendant wore ordinary civilian clothes and no military uniform.* The source of my information and the ground of my belief are the conversations and observations above narrated. Upon information and belief I aver that the defendant is not in the military service of New York State or of the United States as that term is defined in either the State or in the Federal statutes.

**Description:**

| | | | | | |
|---|---|---|---|---|---|
| Age:  55 | Ethnicity:  Caucasian | | Gender:  Female | | Weight:  125 lbs |
| Height:  5'5" | Hair:  Brown | | Eyes: | Relationship:  Authorized Agent | |

Other    Service was completed at the New York State Secretary of State. The registered mailing as required was completed on 01/13/22 with tracking number RF248583703US.

Sworn to before me on    1-18-2022

_____                                      _____
Samuel Christiansen                                               Notary Public

OFFICIAL SEAL
NICOLLE O. CHRISTIANSEN
Notary Public-New York
No. 01CH6408751
My Commission Expires
SEPTEMBER 08, 20 24

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

LIBERTAS FUNDING, LLC

Plaintiff,

-against-

ACM DEVELOPMENT, LLC; LUCID TECH LLC;
EMPIRICAL RETAIL LLC; EUPHORIA RETAIL
LLC; NINETEEN SEVENTY FOUR LLC; OMEGA
ENTERPRISES LLC; IRONSHIELD PAVING LLC;
RAD RETAIL LLC; SUN FL ENTERPRISES LLC;
LOLYPALOOZA ENTERPRISES LLC; KINGDOM
PROPERTY INVESTMENTS LLC and ERIC RAY
MYNHIER,

Defendants

Index No.: 530150/2021

**AFFIRMATION OF ADDITIONAL
MAILING PURSUANT TO
CPLR §3215(g)(3) and 3215(g)(4)**

STATE OF NEW YORK)
COUNTY OF NEW YORK)

Steven Zakharyayev, an attorney at law, duly licensed to practice in the Courts of the State of New York, affirms the following under penalty of perjury:

I am over 18 years of age and am not a party to this action. I reside in the State of New Jersey.

On January 21, 2022, I served an additional copy of the Notice of Commencement of Action Subject to Mandatory Electronic Filing, Summons and Verified Complaint on ERIC RAY MYNHIER in accordance with the additional notice requirements of CPLR § 3215(g)(3) by mailing same in a sealed envelope, bearing the legend "personal and confidential" and not indicating on the outside that the communication is from an attorney or concerns an alleged debt, with postage paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York designated for that purpose addressed to:

On January 21, 2022, I served an additional copy of the Notice of Commencement of Action Subject to Mandatory Electronic Filing, Summons and Verified Complaint on ACM DEVELOPMENT, LLC; LUCID TECH LLC; EMPIRICAL RETAIL LLC; EUPHORIA RETAIL LLC; NINETEEN SEVENTY FOUR LLC; OMEGA ENTERPRISES LLC; IRONSHIELD PAVING LLC; RAD RETAIL LLC; SUN FL ENTERPRISES LLC; LOLYPALOOZA ENTERPRISES LLC; KINGDOM PROPERTY INVESTMENTS LLC in accordance with the additional notice requirements of CPLR § 3215(g)(4) by mailing same in a sealed envelope, bearing the legend "personal and confidential" and not indicating on the outside that the communication is from an attorney or concerns an alleged debt, with postage paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service within the State of New York designated for that purpose addressed to:

Dated: January 21, 2022
      New York, New York

Law Offices of Steven Zakharyayev, PLLC
*Attorney for Judgment-Creditor*
Empire Recover Services, LLC
10 W 37th Street, RM 602
New York, NY 10018

*/s/Steven Zakharyayev*
Steven Zakharyayev, Esq.

T: 201-716-0681
E: LegalDepartment@EmpireRecover.com

Defendant(s)' Address(es)
ERIC RAY MYNHIER
938 TILDEN OAKS TRAIL, WINTER GARDEN, FL 34787

ACM DEVELOPMENT, LLC
562 BOWNESS AVE, OCOEE, FL 34761

LUCID TECH LLC
562 BOWNESS AVE, OCOEE, FL 34761

EMPIRICAL RETAIL LLC
562 BOWNESS AVE, OCOEE, FL 34761

EUPHORIA RETAIL LLC
562 BOWNESS AVE, OCOEE, FL 34761

NINETEEN SEVENTY FOUR LLC
562 BOWNESS AVE, OCOEE, FL 34761

OMEGA ENTERPRISES LLC
562 BOWNESS AVE, OCOEE, FL 34761

IRONSHIELD PAVING LLC
562 BOWNESS AVE, OCOEE, FL 34761

RAD RETAIL LLC
562 BOWNESS AVE, OCOEE, FL 34761

SUN FL ENTERPRISES LLC
562 BOWNESS AVE, OCOEE, FL 34761

LOLYPALOOZA ENTERPRISES LLC
562 BOWNESS AVE, OCOEE, FL 34761

KINGDOM PROPERTY INVESTMENTS LLC
562 BOWNESS AVE, OCOEE, FL 34761