UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LIBERTAS FUNDING, LLC,

              Plaintiff,

v.

ACM DEVELOPMENT, LLC, LUCID TECH LLC, EMPIRICAL RETAIL LLC, EUPHORIA RETAIL LLC, NINETEEN SEVENTY FOUR LLC, OMEGA ENTERPRISES LLC, IRONSHIELD PAVING LLC, RAD RETAIL LLC, SUN FL ENTERPRISES LLC, LOLYPALOOZA ENTERPRISES LLC, KINGDOM PROPERTY INVESTMENTS LLC, VOREX RETAIL LLC, and ERIC RAY MYNHIER,

              Defendants.

**MEMORANDUM & ORDER**
22-CV-00787 (HG) (MMH)

**HECTOR GONZALEZ**, United States District Judge:

    Defendants have removed Plaintiff's state law claims for breach of contract and breach of guaranty based on their assertion that Plaintiff's claims are sufficiently intertwined with a bankruptcy proceeding commenced by a single Defendant, ACM Development, LLC. *See* ECF No. 1. Plaintiff has moved to remand those claims back to state court for lack of jurisdiction. *See* ECF No. 9. Defendants, on the other hand, have requested permission to file a motion to transfer the case to the U.S. District Court for the Middle District of Florida, the court where the bankruptcy proceeding is pending. *See* ECF Nos. 14, 17.

    The Court finds that Plaintiff's claims satisfy the criteria for mandatory abstention in 28 U.S.C. § 1334(c)(2), as well as the criteria for permissive abstention in 28 U.S.C. § 1334(c)(1) and equitable remand in 28 U.S.C. § 1452(b). The Court therefore remands this case to the

Supreme Court of the State of New York, Kings County, and denies as moot Defendants' request to transfer the case.

## PROCEDURAL HISTORY

Plaintiff entered into a single contract with each of the entity Defendants to purchase their future streams of accounts receivable, in exchange for an upfront payment. ECF No. 1 at 26. Plaintiff alleges that contract required Defendants to deposit the funds they received from their customers into a specific bank account, from which Plaintiff was authorized to make automatic withdrawals each week. *Id.* at 26–27, 43, 47. Defendant Mynhier owns each of the entity Defendants and guaranteed their payment obligations. *Id.* at 44, 49–51. The parties disagree whether the economics of their arrangement rendered it the legal equivalent of a loan, but that disagreement is irrelevant to their current motions. *See* ECF No. 1 at 3; ECF No. 9-4 at 9.

Defendants allegedly breached the contract by placing their customers' payments into a different bank account, which Plaintiff could not access. ECF No. 1 at 27. Plaintiff therefore filed breach of contract and breach of guaranty claims in the Commercial Division of Kings County Supreme Court based on a forum selection clause in the parties' contract. *Id.* at 2, 26, 45. Those claims seek the exact same amount of money from each of the entity Defendants, which Plaintiff alleges is the amount of future receivables it is owed under the parties' agreement. *Id.* at 27–34.

One Defendant, ACM Development, LLC ("ACM"), filed a Chapter 11 bankruptcy petition in the Middle District of Florida approximately one week after Plaintiff served its complaint. *Id.* at 2, 8. Although Mynhier appears to be a common owner of each entity Defendant—and Defendants' brief refers to the entity Defendants collectively as the "ACM Entities"—ACM's bankruptcy filings say that the other entity Defendants are simply its co-

2

debtors and not its subsidiaries or affiliates.  ECF No. 13 at 1; Bankr. ECF No. 54 at 49–51, 60.[1]  The remaining entity Defendants are therefore not parties to ACM's bankruptcy proceeding, and Defendants have not alleged that the remaining entity Defendants have filed separate bankruptcy petitions.  *See* ECF Nos. 1 & 13.

Following ACM's bankruptcy petition, Defendants timely filed a notice of removal in this Court, asserting that the bankruptcy proceeding provides the Court with removal jurisdiction pursuant to 28 U.S.C. §§ 1334 and 1452.  ECF No. 1.  Plaintiff timely moved to remand the case.  ECF No. 9.  While the parties were briefing that motion, Defendants requested a pre-motion conference to discuss a proposed motion to transfer the case to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a), which Plaintiff opposes.  ECF Nos. 14, 17.

ACM's bankruptcy proceedings have continued while these motions have been pending.  ACM has proposed a plan of reorganization that includes a payment plan for its debt to Plaintiff, and an injunction against Plaintiff collecting ACM's debt from Mynhier pursuant to Mynhier's guaranty.  Bankr. ECF No. 168 at 18, 39.  The Trustee appointed in ACM's bankruptcy proceeding recently withdrew its objections to ACM's plan after ACM submitted two rounds of amendments, including amendments that impose restrictions on Mynhier's ability to use ACM's assets.  Bankr. ECF No. 268 at 10–11; Bankr. ECF No. 275; Bankr. ECF No. 281.

## LEGAL STANDARD

Federal district courts have "original but not exclusive jurisdiction" over three types of proceedings related to Title 11 of the U.S. Code, otherwise known as the Bankruptcy Code:  (a) cases "arising under" the Bankruptcy Code; (b) proceedings "arising in" a case under the

---

[1] References in this decision to "Bankr. ECF No." refer to the docket entries in ACM's Chapter 11 proceeding pending in the Middle District of Florida:  No. 22-bk-00210.  References to "ECF No." refer to the entries on this Court's docket.

Bankruptcy Code; and (c) proceedings "related to" a case under the Bankruptcy Code. 28 U.S.C. § 1334(b)(2); *see In re Robert Plan Corp.*, 777 F.3d 594, 596–97 (2d Cir. 2015). A defendant may remove from state court any action that falls within the scope of that jurisdiction, so long as it is not "a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." 28 U.S.C. § 1452(a). Since this lawsuit is between a group of private litigants, that exception does not apply.

Cases that fall within either the "arising under" or "arising in" jurisdiction described above are referred to as "[c]ore proceedings." *Robert Plan Corp.*, 777 F.3d at 596. "Proceedings arising under the Bankruptcy Code are those that clearly invoke substantive rights created by federal bankruptcy law." *Id.* (internal quotation marks omitted). A court's "arising in" jurisdiction "covers claims that are not based on any right expressly created by [T]itle 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (internal quotation marks omitted) (alteration in original).

A case that is not a core proceeding nevertheless falls within a court's "related to" jurisdiction if its "outcome might have any conceivable effect on the bankrupt estate"—regardless of whether that outcome is positive or negative. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 340 (2d Cir. 2018). "While 'related to' jurisdiction is not limitless, it is fairly capacious, and includes suits between third parties which have an effect on the bankruptcy estate." *Id.* (internal citations and quotation marks omitted).

The difference between proceedings that are merely "related to" a case pending under the Bankruptcy Code and "core" Bankruptcy Code proceedings is significant because the former proceedings are subject to mandatory abstention if they satisfy the elements described in 28 U.S.C. § 1334(c)(2). *See Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579–80

4

(2d Cir. 2011).  These elements are:  "(1) the motion to abstain is timely; (2) the action is based on a state law claim; (3) the action is 'related to' but not 'arising in' a bankruptcy case or 'arising under' the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) the action can be timely adjudicated in state court."  *Cipollone v. Applestein*, No. 20-cv-1614, 2022 WL 307051, at *2 (E.D.N.Y. Feb. 2, 2022).

Even if a party has commenced core bankruptcy proceedings in federal court—or removed them to federal court—courts may voluntarily abstain from hearing those proceedings under certain circumstances.  Section 1334(c)(1) permits a court to abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law."  28 U.S.C. § 1334(c)(1).  Courts consider the following factors "[i]n deciding whether to permissibly abstain" under this section:

> (1) the effect or lack thereof on the efficient administration of the [bankruptcy] estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [sic] [the court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*Osuji v. HSBC Bank, U.S.A., N.A.*, 580 B.R. 605, 612 (E.D.N.Y. 2018) (alterations in original).

Section 1452(b) provides another basis for abstention that applies specifically to removed cases, allowing a federal court to remand claims to state court "on any equitable ground."  28

U.S.C. § 1452(b).  The criteria for assessing equitable remand under 28 U.S.C. § 1452(b) and permissive abstention under 28 U.S.C. § 1334(c)(1) "are essentially the same and are often analyzed together." *Worldview Ent. Holdings, Inc. v. Woodrow*, 611 B.R. 10, 20 (S.D.N.Y. 2019).  Nevertheless, when considering equitable remand, courts typically identify a slightly smaller list of relevant factors than when considering permissive abstention:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*Anonymous #1 v. Kelsey*, No. 20-cv-1542, 2021 WL 4940997, at *4 (S.D.N.Y. July 19, 2021); *see also Aqua Shield, Inc. v. Brooks*, No. 13-cv-3008, 2013 WL 5781234, at *3 (E.D.N.Y. Oct. 24, 2013) (applying same factors).  When a court considers applying permissive abstention or equitable remand to a core bankruptcy proceeding, however, it must consider these factors "[a]gainst the bedrock principle that federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'"  *KeyBank, N.A. v. Franklin Advisers, Inc.*, 600 B.R. 214, 225 (S.D.N.Y. 2019) (quoting *Colo. River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817 (1976)).

## DISCUSSION

Since Plaintiff has presented a remand motion challenging the Court's jurisdiction and Defendants have proposed a "competing motion[]" to transfer venue, the Court must "consider the remand motion first, and then address the motion to transfer venue only if it first denies the motion to remand."  *Goldman v. Grand Living II, LLC*, No. 21-cv-1028, 2021 WL 4033277, at *3 (E.D.N.Y. Sept. 3, 2021); *see also Worldview Ent.*, 611 B.R. at 15 (explaining that remand motions must be decided before transfer motions).  The Court concludes that remand is

appropriate because although Plaintiff's state law claims relate to ACM's pending bankruptcy proceeding, they meet the criteria for mandatory abstention, permissive abstention, and equitable remand. The Court therefore denies as moot Defendants' proposed motion to transfer this case to the Middle District of Florida, although that motion would have failed on the merits because of the New York forum selection clause in the parties' contract.

### I. The Court Has "Related to" Jurisdiction Over All of Plaintiff's Claims, But They Are Not Core Bankruptcy Proceedings.

As an initial matter, the Court must determine whether this case is a "core" Bankruptcy Code proceeding, or merely "related to" a case pending under the Bankruptcy Code and thus subject to the mandatory abstention criteria described in 28 U.S.C. § 1334(c)(2).

Plaintiff's claims are not core proceedings for purposes of assessing the Court's bankruptcy jurisdiction under 28 U.S.C. § 1334, and Defendants' brief has abandoned any assertions to the contrary initially raised in their notice of removal. *See* ECF No. 13 at 4–5; ECF No. 1 at 3. Plaintiff's claims do not "arise under" the Bankruptcy Code because Plaintiff asserts only New York common law claims, rather than claims "created by federal bankruptcy law." *Goldman*, 2021 WL 4033277, at *3. Plaintiff's claims also do not "arise in" a bankruptcy proceeding because they are based on a contract that the parties entered into before ACM's bankruptcy and breaches that allegedly occurred before that bankruptcy. *47 E. 34th St. (NY), L.P. v. BridgeStreet Worldwide, Inc.*, No. 20-cv-9978, 2021 WL 2012296, at *4 (S.D.N.Y. May 20, 2021). The contract at issue was neither created after ACM commenced its bankruptcy proceeding, nor does its interpretation depend on the interpretation of the bankruptcy court's orders issued during that proceeding. *See KeyBank*, 600 B.R. at 227 (holding that "arising in" jurisdiction existed for breach of contract claims under such circumstances). Such contract claims are not the type of claims that "would have no existence outside of the bankruptcy." *GE*

7

*Oil & Gas, LLC v. Turbine Generation Servs., LLC*, No. 18-cv-7555, 2019 WL 2008575, at *6 (S.D.N.Y. May 7, 2019). The same analysis applies to Plaintiff's breach of guaranty claim against Mynhier; the claim against him does not become a core proceeding simply because he has guaranteed the debt of "a corporation that is now in bankruptcy." *Schumacher v. White*, 429 B.R. 400, 406 (E.D.N.Y. 2010).

Defendants are correct, however, that Plaintiff's claims are "related to" ACM's pending bankruptcy proceeding. As explained above, the Second Circuit has held that "related to" jurisdiction applies whenever the outcome of a claim filed outside of a bankruptcy proceeding "might have any conceivable effect on" the estate of the debtor in the bankruptcy proceeding. *SPV Osus*, 882 F.3d at 339–40. This most clearly applies to Plaintiff's breach of contract claim against ACM—the bankrupt debtor—"because the outcome of th[at] claim[] will have a direct, and therefore conceivable, effect on the bankruptcy estate." *Worldview Ent.*, 611 B.R. at 17.

Plaintiff's claims against the remaining Defendants are also related to ACM's bankruptcy proceeding even though those Defendants are not parties to the proceeding. Plaintiff seeks to hold all Defendants jointly and severally liable for the total debt Plaintiff is allegedly owed. ECF No. 1 at 27–34; ECF No. 9-4 at 9. If ACM is jointly and severally liable for the same obligation as the other Defendants, then a satisfied judgment against those Defendants "would reduce [ACM's] obligation" and thereby "positively affect" ACM's bankruptcy estate. *Tailored Fund Cap LLC v. RWDY, Inc.*, No. 20-cv-762, 2020 WL 6343307, at *6 (N.D.N.Y. Oct. 29, 2020). Alternatively, if any Defendant other than ACM overpays its share of the judgment, it might "assert[] a claim for contribution or indemnification . . . against [ACM's] estate." *In re Purdue Pharms. L.P.*, 619 B.R. 38, 51 (S.D.N.Y. 2020) (holding that "related to" jurisdiction existed over tort claims against non-bankrupt defendants); *see also 47 E. 34th St. (NY)*, 2021 WL

8

2012296, at *8 (holding that "related to" jurisdiction existed over contract claims against non-bankrupt defendants that were subject to contractual indemnification). Plaintiff criticizes Defendants for supposedly flip-flopping about whether the claims against the Defendants other than ACM will help or harm ACM's estate. ECF No. 16 at 2. That criticism, however, ignores the Second Circuit's instruction that "related to" jurisdiction exists if a claim "could alter the debtor's rights, liabilities, options, or freedom of action (*either positively or negatively*)." *SPV Osus*, 882 F.3d at 340 (emphasis added).

## II.    Mandatory Abstention Requires Remand to State Court.

Since the Court has only "related to" jurisdiction over Plaintiff's claims, they are subject to the mandatory abstention criteria described in 28 U.S.C. § 1334(c)(2). Many of the elements required for mandatory abstention clearly apply, and Defendants do not dispute them. *See* ECF No. 13 at 6–7. Plaintiff commenced this lawsuit in state court and asserted exclusively state law claims. *See GE Oil & Gas*, 2019 WL 2008575, at *6. After Defendants removed the case, Plaintiff timely filed a motion for remand that "expressly argued that mandatory abstention applies." *Goldman*, 2021 WL 4033277, at *4. The only elements that could conceivably prevent mandatory abstention are therefore: (i) whether the Court can exercise diversity jurisdiction over Plaintiff's claims and (ii) whether Plaintiff's claims can be timely adjudicated in state court. *Cipollone*, 2022 WL 307051, at *2.

Defendants' argument that the Court may exercise diversity jurisdiction, pursuant to 28 U.S.C. § 1332, as an alternative to bankruptcy jurisdiction, pursuant to 28 U.S.C. § 1334, fails as a matter of both procedure and substance. *See* ECF No. 13 at 7. Procedurally, Defendants did not assert diversity jurisdiction in their notice of removal but instead did so for the first time when opposing Plaintiff's motion to remand—well over 30 days after receiving service of Plaintiff's complaint. *See* ECF No. 1 at 2–4; ECF No. 13 at 7; *see also* 28 U.S.C. § 1446(b)

9

(allowing defendants 30 days to file a notice of removal).  Under such circumstances, "[a] notice of removal may not be sustained on a ground of jurisdiction not stated in that notice."  *See Tailored Fund Cap*, 2020 WL 6343307, at *7 (alteration in original); *see also Worldview Ent.*, 611 B.R. at 18 n.7 (rejecting diversity jurisdiction as an alternative basis for removal because 28 U.S.C. § 1446(c) "bars removal of diversity cases more than one year after commencement of the action").

      Substantively, Defendants' belated attempt to assert diversity jurisdiction fails because neither Defendants nor Plaintiff have identified the parties' states of citizenship.  Plaintiff is a limited liability company asserting state law claims against twelve other limited liability companies.  ECF No. 1 at 25–26.  Each of these companies "takes the citizenship of all of its members."  *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 615 (2d Cir. 2019).  Defendants therefore miss the mark by arguing that "Plaintiff is a Connecticut-company and all of the Defendants are Florida entities or persons," *see* ECF No. 13 at 7, because Plaintiff's complaint merely identifies each entity Defendant as a "foreign limited liability company" without alleging the identities or citizenship of their members, *see* ECF No. 1 at 25–26.  Defendants' notice of removal similarly does not provide this information, *see* ECF No. 1 at 1–5, as it was required to do because "[t]he removing defendant[s] ha[ve] the burden of establishing federal jurisdiction."  *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021).  The Court therefore does not have sufficient information to determine whether diversity jurisdiction exists, and Defendants cannot avoid mandatory abstention on that basis.

      Plaintiff's claims satisfy the final requirement for mandatory abstention because they can be timely adjudicated in state court.  The Second Circuit has instructed courts to consider the following "[f]our factors" when "evaluating § 1334(c)(2) timeliness:  (1) the backlog of the state

10

court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate." *Parmalat*, 639 F.3d at 580. Weighing these factors is not as simple as asking "whether an action could be adjudicated most quickly in state court." *Goldman*, 2021 WL 4033277, at *4 (quoting *Parmalat*, 639 F.3d at 580). Instead, "[a] state court . . . may still be a timely forum, even if it will require more time to adjudicate an action than a federal court, as long as the bankruptcy proceedings will not be hindered by the delay." *In re Miami Metals I, Inc.*, 625 B.R. 593, 601 (Bankr. S.D.N.Y. 2021).

The Second Circuit has expressly left undecided "which party should bear the burden" on these factors regarding timely adjudication. *See Parmalat*, 639 F.3d at 582; *Parmalat Cap. Fin. Ltd. v. Bank of Am. Corp.*, 671 F.3d 261, 270 n.4 (2d Cir. 2012) (reiterating on subsequent appeal that the burden remained undecided). Multiple district court and bankruptcy court decisions have since concluded that the removing defendant bears this burden, consistent with the defendant's overall burden of establishing removal jurisdiction. *See, e.g.*, *MHS Cap., LLC v. Goggin*, No. 16-cv-1794, 2016 WL 3522198, at *4 (S.D.N.Y. June 13, 2016); *Multibank, Inc. v. Access Global Cap. LLC*, 594 B.R. 618, 629 (Bankr. S.D.N.Y. 2018). The Court takes no position on this uncertainty because the timeliness factors clearly counsel mandatory abstention regardless of which party bears the burden.

The four timeliness criteria collectively weigh in favor of abstention. Since neither party has presented evidence showing "the backlog of the state court's calendar relative to the federal court's calendar," the Court declines to "presume [that] one court's backlog is more manageable than the other's." *Goldman*, 2021 WL 4033277, at *4. Even if the state court has a larger

11

backlog, this Court has no doubt that the state court can decide Plaintiff's case with sufficient speed because "[f]ederal [c]ourts in this Circuit have repeatedly concluded that the Commercial Division" of the New York Supreme Court "constitutes a timely forum." *Daskal v. Banco Popular N. Am.*, No. 13-cv-1942, 2014 WL 724279, at *4 (E.D.N.Y. Feb. 24, 2014). The Commercial Division is also eminently capable of adjudicating Plaintiff's contract claims, which are not "intertwined with" any complex issues of federal law. *Goldman*, 2021 WL 4033277, at *4; *see also Worldview Ent.*, 611 B.R. at 19 (explaining that "federal judges have no special expertise" dealing with "contract claims based on New York state law").

On the other hand, it would be inefficient to send Plaintiff's claims to the bankruptcy court in the Middle District of Florida, which Defendants propose as the parties' ultimate destination. As described above, Plaintiff's claims do not satisfy the definition of core bankruptcy proceedings, and "bankruptcy courts can only issue proposed findings of fact and law" for non-core claims. *Joseph & Kirschenbaum LLP v. Tenenbaum*, No. 19-cv-5577, 2020 WL 242374, at *5 (S.D.N.Y. Jan. 16, 2020); *see also* 28 U.S.C. § 157(c)(1). Requiring the parties to engage in the process of submitting objections to the bankruptcy court's ruling for the district court's *de novo* review would cause unnecessary delay in a contract case that the state court should be able to resolve on summary judgment. *Kirschenbaum*, 2020 WL 242374, at *5.

The remaining timeliness factors also favor abstention because no other Defendant is a party to ACM's bankruptcy proceeding besides ACM, and Plaintiff's claims against ACM will be subject to the Bankruptcy Code's automatic stay "unless and until it is lifted by the bankruptcy court." *Worldview Ent.*, 611 B.R. at 19; *Tailored Fund Cap*, 2020 WL 6343307, at *8 (explaining that "there [wa]s no pressing need for plaintiff's claims to be resolved" because the claims against the debtor defendant "[we]re stayed"). "Thus, there is little chance that the

12

bankruptcy proceedings will be affected or delayed by the state court proceeding." *Worldview Ent.*, 611 B.R. at 19.

### III. Permissive Abstention Also Justifies Remand to State Court.

Even if mandatory abstention did not apply to Plaintiff's claims, permissive abstention pursuant to 28 U.S.C. § 1334(c)(1), or alternatively equitable remand pursuant to 28 U.S.C. § 1452(b), are appropriate here according to the factors described above. "[T]he predominance of state law issues has been described as one of the more compelling reasons for abstaining." *Osuji*, 580 B.R. at 614. State law issues clearly predominate over any conceivable federal issues in this case because Plaintiff's complaint asserts solely state law claims. *See 47 E. 34th St. (NY)*, 2021 WL 2012296, at *10. This remains true even though Plaintiff's breach of contract claims are not particularly complicated. State courts still "have the greatest interest in resolving issues of state law"—even non-complex ones. *Anonymous #1*, 2021 WL 4940997, at *4.

Furthermore, since Plaintiff's claims against ACM are "subject to an automatic stay," "the bankruptcy court will be able to determine how th[ose] state law claims will proceed following remand." *Worldview Ent.*, 611 B.R. at 20. Once the bankruptcy court has decided how ACM's obligations will be treated pursuant to ACM's plan of reorganization, the state court can dispose of Plaintiff's claims against ACM accordingly. "Remand of the state law claims serves the dual purposes of respecting both the New York State court and the bankruptcy proceedings currently ongoing in the [Middle District of Florida] . . . ." *Id.*

### IV. Defendants' Proposed Transfer Is Moot and Lacks Merit.

Since the Court is remanding this case to state court, the Court denies as moot Defendants' proposed motion to transfer the case to the Middle District of Florida. *See* ECF No. 14; *Goldman*, 2021 WL 4033277, at *6; *Worldview Ent.*, 611 B.R. at 20. Nevertheless, the motion would have failed on the merits. The parties' contract contains a forum selection clause

13

stating that "[a]ny lawsuit, action or proceeding arising out of or in connection with this Agreement shall be instituted exclusively in any court sitting in New York State."  ECF No. 1 at 45.  In that same clause, Defendants "irrevocably submit[ted]" to the jurisdiction of the New York courts and "waive[d] any and all objections to inconvenience of the jurisdiction or venue."  *Id.*  Since the Court has only "related to" jurisdiction over Plaintiff's non-core claims, there is insufficient reason to disregard the parties' irrevocable choice of forum.  *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 620 B.R. 456, 467–68 (S.D.N.Y. 2020) (denying motion to transfer because of parties' forum selection clause even though the clause was "non-exclusive"); *cf. Deutsche Oel & Gas S.A. v. Energy Cap. Partners Mezzanine Opportunities Fund A, LP*, No. 19-cv-11058, 2020 WL 5814233, at *14 (S.D.N.Y. Sept. 30, 2020) (transferring case and explaining that forum selection clauses are entitled to less weight in core bankruptcy proceedings).

## **CONCLUSION**

The Court grants Plaintiff's motion to remand this case to the Supreme Court of the State of New York, Kings County because the Court lacks jurisdiction over Plaintiff's claims for the reasons set forth above.  *See* ECF No. 9.  The Court denies as moot Defendants' request to transfer the case to the U.S. District Court for the Middle District of Florida.  *See* ECF No. 14.

SO ORDERED.

                                             */s/ Hector Gonzalez*
                                             HECTOR GONZALEZ
                                             United States District Judge

Dated: Brooklyn, New York
       October 7, 2022